**ROBERTS v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 11999.**

United States Court of Appeals
Ninth Circuit.

June 27, 1949.

222

Gilbert J. Heyfron, Earl E. Howard, Hollywood, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sumner M. Redstone and S. Walter Shine, Sp. Assts. to the Atty Gen., for respondent.

Before MATHEWS and HEALY, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

Harry A. Roberts, the petitioner, was employed as a taxi-cab driver by the Yellow Cab Company of California. His salary was the greater of either a fixed minimum or a stated percentage of his daily meter receipts or bookings. The Company forbade the solicitation of tips. Nevertheless, during the year, the petitioner received tips from about 50 per cent of the passengers. In his return for the taxable year of 1943, which he filed jointly with his wife, Ruth M. Roberts, who joins him in this petition, he made no return of these tips, of which, in fact, he kept no record.

On May 29, 1946, the Commissioner determined a deficiency and notified the petitioner that his return showed a deficiency of $144.34, based upon an addition to his reported income of the amount of $661.94, representing the tips which the Commissioner claimed were received and which the filed return did not reflect.

On August 21, 1946, the petitioner filed a petition with the Tax Court for a redetermination of the deficiency under the provisions of Section 272 of the Internal Revenue Code, 26 U.S.C.A. § 272.

On April 2, 1948, the Court rendered its decision sustaining the deficiency.

This is a petition to review the judgment of the Tax Court. 26 U.S.C.A. § 1141(a).

Two questions are involved: (1) Were the tips compensation for personal services? and (2) Was the Tax Court right in sustaining the Commissioner's determination that the tips were approximately 10 per cent of the gross fares?

■ Section 22 of the Internal Revenue Code defines "gross income" as follows: "(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, * * *." 26 U.S.C.A. § 22(a).

Treasury Regulations 111 defines "compensation for personal services" in this manner: "Sec. 29.22(a)-2. Compensation for Personal Services. Commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips * * *"

The essential question for determination is whether tips are income. The Regulation just cited declares them such. Treasury Regulations,—unless in excess of authority, are binding upon the courts, especially if the provisions which they interpret were reenacted after their promulgation. Morrissey v. Commissioner, 1935, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Coast Carton Co. v. Commissioner, 9 Cir., 1945, 149 F.2d 739. Of course, regulations "can add nothing to income as defined by Congress." M. E. Blatt Co. v. United States, 1938, 305 U.S. 267, 279, 59 S.Ct. 186, 190, 83 L.Ed. 167.

■ The petitioner challenges the regulation upon the ground that the tips are gifts under Section 22(b) (3) of the Internal Revenue Code, 26 U.S.C.A. § 22(b) (3). It may be conceded that, as a rule, a payment cannot, at the same time, be a gift and income. Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32. However that norm is applicable only in case of genuine gifts. In Botchford v. Commissioner, 9 Cir., 1936, 81 F.2d 914, 110 A.L.R. 281, this court recognized the principle that additional compensation for past services *may* constitute taxable income. And this principle is generally recognized in other Circuits. These decisions make the determination dependent upon the circumstances surrounding each case. And generally, the courts insist that the essential characteristics of a gift,—*absence of consideration*—be present. Blair v. Rosseter, 9 Cir., 1929, 33 F.2d 286; Schumacher v. United States, 1932, 55 F.2d 1007, 74 Ct.Cl. 720; Weagant v. Bowers, 2 Cir., 1932, 57 F.2d 679; and see, Bass v. Hawley, 5 Cir., 1933, 62 F.2d 721, 732; Simpkinson v. Commissioner, 5 Cir., 1937, 89 F.2d 397, 399; Willkie v. Commissioner, 6 Cir., 1942, 127 F.2d 953, 955–956; Dasteel v. Rogan, 1941, D.C.Cal., 41 F.Supp. 836.

■ We need not go into a historical consideration of the origin of tipping. References to the practice may be found, in one form or another, dating back more than a century. From the very beginning of the practice, it was evident that, whether considered from the standpoint of the giver or the recipient, it lacked the essential element of a gift,—namely, *the free bestowing of a gratuity without consideration*. Despite apparent voluntariness, there is an element of compulsion in tipping. This has been evident to observers in times past when tipping was not so prevalent as it is now. Joseph T. Shipley, in his Dictionary of Word Origins, 1945, gives this account of the origin of the word: "The word has several meanings, with origins more or less obscure; connected with tap and with top. In the sense of a sum of money given for good service, other languages are more specific, e. g., Fr. *pourboire,* for drink. It is suggested that our word is formed from the practice, in early 18th c. London coffee-houses, of having a box in which persons in a hurry would drop a small coin, to gain immediate attention. The box was labeled To Insure Promptness; then just with the initials T.I.P. See stubble." (p. 358)

Sir Walter Scott noted in his Journal, under date of April 9, 1828: "I like to pay postilions and waiters rather more liberally than perhaps is right. I hate grumbling and sour faces, and the whole saving will not exceed a guinea or two for being cursed and damned from Dan to Beersheba". (Walter Scott, Journal, April 9,

1828, quoted in H. L. Mencken, A New Dictionary of Quotations, 1942, p. 120)

The petitioner presses the argument that tips are unrelated to the services rendered. Indeed, it is argued that they are merely an expression of exhibitionism or "show-offishness" on the part of the giver—a propitiation for his vanity. This assumption overlooks the true nature of the usage or the meaning which the word "tipping" has acquired. Actually, a tip is connected directly with the service and its quality. He who tips thereby expresses not his own self-conceit, but his gratification with the service by compensating the servant over and above the regular remuneration for the service. Concede that, in many instances, the tip has come to be so commonly accepted an incidence of a certain type of service that he who fails to give it may incur the haughty stare of the servant when he leaves, or expect even a haughtier stare of the servant if he appears again,—"the grumbling and sour faces" of which Sir Walter Scott spoke. Grant also that, with certain individuals, the manner and amount of their tipping may involve an element of gratification of vanity, nonetheless, the giving of a tip is tied to the service, without which the occasion would not have arisen. And courts, when asked to determine the nature of tips, have interpreted them, in the main, as being "additional compensation". The dictionaries give this, among the definitions of the word. We find a summary of these definitions in Williams v. Jacksonville Terminal Co., 5 Cir., 1942, 118 F.2d 324, 325, affirmed in Williams v. Jacksonville Terminal Co., 1942, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914: "Webster's International Dictionary makes the tip to be a gift, a fee; and defines a fee as a compensation for service rendered. The Standard Dictionary says a tip is money given, as to a servant, to secure better or more prompt service. It would seem that a tip may range from a pure gift out of benevolence or friendship, to a compensation for a service measured by its supposed value but not fixed by an agreement. *Most often the term is applied to what is paid a servant in addition to the regular compensation for his service,* to secure better service or in recognition of it." (Emphasis added.) See also, Union Terminal Co. v. Pickett, 5 Cir., 1941, 118 F.2d 328.[1]

Two prior decisions of the Tax Court, *by implication at least,* recognize tips as income. In Bateman v. Commissioner, 1936, 34 B.T.A. 351, tips paid by a taxpayer to shipping clerks, car clerks, dock clerks and other employees of railroad and steamship companies were held deductible as "ordinary and necessary" business expenses.

In Cesanelli v. Commissioner, 1947, 8 T.C. 776, a 50 per cent penalty for fraud in endeavoring to avoid taxes by failing to report tips received by taxpayers as waiters was sustained.

To consider tips as a deductible expense, as in the Bateman case, and to warrant imposition of penalties for failing to report tips, as in the Cesanelli case, it was necessary that the court conclude that the tips were additional compensation for services. So, while the point here under consideration is not directly ruled on, it is implicit in both decisions. And there is a decision by the Tax Court which distinctly held that the tips of a woman taxicab driver should have been included in her tax return. The court sustained a computation of the income derived from tips on the basis of evidence of taxicab drivers similarly situated, and refused to allow her to deduct, as a business expense, tips she claimed to have paid over to the taxicab company.

---

[1] Cases such as Herbert's Laurel-Ventura, Inc., v. Laurel Ventura Holding Corp., 1943, 58 Cal.App.2d 684, 694, 138 P.2d 43, dealing with the ownership of tips as between the employer and the employee are not very helpful. They do not touch the problem before us. For there, the court was concerned mainly with the question whether the tips of employees belonged to the lessor (employer) or the lessee, under a percentage rental contract of a drive-in restaurant. It held that they belonged to neither. And the language used in determining the matter is not an authoritative determination of the nature of tips as taxable income under the Internal Revenue Act.

Foster v. Commissioner, 10 T.C. 1299, decided on February 27, 1948.

■ We believe that these decisions, insofar as they regard tips as additional compensation, either directly or by inference, accord with the general nature of tipping, as we have outlined it. More, a contrary conclusion classifying them as gifts would go counter to the decisions already adverted to, which make absence of consideration the essential characteristic of a gift. A gift "denotes * * * the receipt of financial advantages gratuitously". Helvering v. American Dental Co., 1943, 318 U.S. 322, 330, 63 S.Ct. 577, 581, 87 L.Ed. 785.

■ In tipping, the financial advantage is conferred on the basis of *a consideration which is related to service*. This makes it clearly income. United States v. McCormick, 2 Cir., 1933, 67 F.2d 867 was a prosecution for willful failure to file an income tax return. The defendant was a deputy city clerk, authorized to perform marriage ceremonies, who was paid a salary by the City, but who also received "voluntary contributions" from bridegrooms after performing marriage ceremonies. To the defense that the monies so received by him were "gifts", as to which there was no obligation to make a return, the Court gave answer: "It is suggested that these contributions were in the nature of gifts, and, under section 213(b) (3) of the Revenue Act of 1926 (26 U.S.C.A. § 22(b) (3) ), were not to be included in gross income. While perhaps there was no consideration (lawful or unlawful) for these payments, there was evidence that they could not be regarded as voluntary gifts, for the contributions were made in order to obtain the marriage certificates promptly and without criticism by McCormick. Many of the payments were practically extorted in order that the married couples might get their certificates at once and avoid the embarrassment of criticism for stinginess. We said in Weagant v. Bowers, 2 Cir., 57 F.2d 679, at page 682, that mere absence of a legal consideration or duty to pay does not make a payment a gift within the meaning of the Revenue Act; that 'an intention to make a gift must be established.'" United States v. McCormick, 2 Cir., 1933, 67 F.2d 867, 869. This accords with the view of the Supreme Court expressed in Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 730, 49 S.Ct. 499, 504, 73 L.Ed. 918: "The payment for services, even though entirely voluntary, was nevertheless compensation within the statute." (And see, Davis v. Commissioner, 6 Cir., 1936, 81 F.2d 137, 138).

But if the problem be considered from the standpoint of the recipient, the result is the same. Tips are "income."

■ The word "income" has a broad meaning in income tax legislation. Its classic definition is still the all-inclusive one of "gain derived from capital, from labor, or from both combined." Eisner v. Macomber, 1920, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. It is "income as the word is known in the common speech of men". United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S. 88, 99, 56 S.Ct. 353, 358, 80 L.Ed. 500. And in applying these criteria, "the revenue laws of the United States are not over-squeamish". Sibley, C. J. in Alexandria Gravel Co. v. Commissioner, 5 Cir., 1938, 95 F.2d 615, 616.

Any monies which come to the taxpayer as the fruits of his labor are "income". Even the lawbreaker cannot "escape liability for the profits of his illegal enterprise." United States v. Metcalf, 9 Cir., 1942, 131 F.2d 677, 679. While embezzled funds are excluded, Commissioner v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884, courts have held taxable as income, monies derived from the practice of illegal activities, such as bootlegging, United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020, or bribery or "graft", United States v. Commerford, 2 Cir., 1933, 64 F.2d 28; Chadick v. United States, 5 Cir., 1935, 77 F.2d 961, or extra-legal exactions, such as excessive or illegal profits of corporate officers, National City Bank v. Helvering, 2 Cir., 1938, 98 F.2d 93; Griffin

v. Smith, 7 Cir., 1939, 101 F.2d 348; Saunders v. Commissioner, 10 Cir., 1939, 101 F.2d 407, and overcharges for services. Chicago, R. I. & P. Ry. Co. v. Commissioner, 7 Cir., 1931, 47 F.2d 990.

So it is quite plain that the contention here made that tips, in general, are merely the result of the donor's exhibitionism and are given merely to satisfy the egotistical instinct of the giver, cannot overcome the unalterable fact that, so far as the recipient is concerned,—the petitioner here,—he received tips as an incident to the service which he rendered to his patrons. They were paid concurrently with the fare as a token of better service received. They are gain derived from his labor as a taxicab driver, i. e., income from the practice of a calling.

 The Tax Court was, therefore, right in sustaining the determination of the Commissioner. They were also correct in sustaining his determination as to the amount of the deficiency. The petitioner had kept no books. So the Tax Court had to determine the amount from such evidence as was presented to them. If the result is an approximation, the lack of exactitude is traceable to the petitioner's own failure to keep accurate accounts. As said by the Court of Appeals for the Second Circuit:

"Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 1930, 39 F.2d 540, 543, 544: The petitioner and a witness testifying in his behalf claimed that the relation of tips to gross earnings was 5 per cent. The witnesses of the Government, basing their estimates on the relation between the tips and the gross bookings, estimated that 10 per cent was a reasonable calculation. The case, therefore, presents clearly a conflict, as to which the conclusion of the Tax Court should be accepted. See, Grace Bros. v. Commissioner, 9 Cir., 1949, 173 F.2d 170.

The judgment of the Tax Court is affirmed.