Robert G. **GOELET**, Francis Goelet and Henry B. Guthrie, as Trustees U/W of Robert W. Goelet (John Goelet), Plaintiffs,

v.

**UNITED STATES** of America, Defendant, and related cases.

United States District Court
S. D. New York.
March 31, 1958.

Shearman & Sterling & Wright, New York City, Paul R. Russell, George W. Sheldon, Jr., New York City, of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty., New York City, Miriam Goldman Cedarbaum, New York City, of counsel, for defendant.

BICKS, District Judge.

Plaintiffs, heirs and trustees for heirs of Robert Walton Goelet, deceased, have brought this consolidated suit for refund of federal income taxes claiming that they are entitled to depreciation deductions on certain improved real property inherited from the testator.

The critical facts, to which the parties have agreed by stipulation, are briefly as follows: In 1929, Robert W. Goelet, the fee owner, demised a 28,000 square foot plot of land known as 1400 Broadway to the Tanager Construction Corporation for a forty-four year term commencing July 1, 1929 and ending April 30, 1973, at a rental and upon terms and conditions more fully set forth in the lease. Consistent with the terms of the lease, the lessee removed the improvements then on the land and erected thereon a 38 story commercial building all at its own cost and expense. The cost to the lessee of demolition, and construction of the new improvements was $3,943,-997.33.

Since the completion of the building in 1931, the lessee has been permitted to deduct from its annual income for tax purposes an allowance for depreciation of the building at a constant rate based on the capitalized value of the improvements over a 42 year period, the unexpired term of the lease at the time the improvements were completed.

In 1941 the lessor died testate and by the terms of his will plaintiffs here inherited his interest in the property.

Plaintiffs received rental income from the property thus leased and paid taxes thereon. They now claim refunds for the years 1944, 1946, 1947, 1948 on the ground that the taxes were computed and paid without a deduction having been taken for depreciation of their interest in the property. They urge that either (1) the building itself is depreciable property in their hands or (2) that the lease has a "premium value" which is amortizable over the term thereof.

The applicable section of the 1939 Internal Revenue Code is § 23(*l*).[1] The purpose of Congress in enacting § 23(*l*) was to allow the taxpayer a means of recouping his investment. The amount which may be deducted is that which should be set aside each year, in order that, at the end of the useful life of the property, the total of the sums thus set aside plus any salvage value will equal the original cost. United States v. Ludey, 1926, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054. The major thrust of the statute is toward an allowance for recovery of *investment* in a wasting asset. See Detroit Edison Co. v. Commissioner of Internal Revenue, 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286 and Commissioner of Internal Revenue v. Revere Land Co., 3 Cir., 1948, 169 F.2d 469. Admittedly, there was no investment in the building by the original lessor, and he was not, plaintiffs agree, entitled to a deduction under § 23(*l*) of the 1939 Code.

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

　＊　　＊　　＊　　＊　　＊

"(*l*) Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income. ＊ ＊ ＊" 26 U.S.C.A. § 23(*l*).

By what alchemy his heirs have acquired an investment status when Goelet himself had none is not demonstrated by plaintiffs. They point to the fact that they now have a basis for depreciation by virtue of § 113(a) (5) [2] and § 114 (a) [3] whereas the basis to Goelet was cost, here zero. The section allowing the heirs to take a new basis, however, was not intended to create a depreciable interest where none existed before. Its purpose was to establish a new basis for the heirs which would accurately reflect the value of the property at the time of acquisition. The depreciability of the interest is a question quite apart from the value assigned to the property in taxpayers' hands. It is only after the existence of a depreciable interest has been demonstrated that we turn to the basis to discover the extent of the allowable deduction.

The suggestion, (never clearly spelled out), was made that the payment of an estate tax not only establishes a new basis but somehow constitutes an investment, the value of which is lost through the effects of wear and tear and time giving rise to a depreciable interest in the hands of the legatees.[4] Such an interpretation of the effect of the estate tax provisions is clearly erroneous. It has been established beyond cavil that this tax is one upon the *transfer* of property and not a tax upon the property itself so that an investment cannot be considered to have been made by virtue of the payment of an estate tax if, in fact, such a tax was paid.[5] See United States

---

2. "§ 113. Adjusted basis for determining gain or loss—
"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—
*       *       *       *       *
"(5) Property transmitted at death. If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *" 26 U.S.C.A. § 113(a) (5).

3. "§ 114. Bais for depreciation and depletion
"(a) Basis for depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property." 26 U.S.C.A. § 114(a).

4. Plaintiffs cite Currier v. Com'r, 1946, 7 T.C. 980 in support of this argument. This case was, however, expressly overruled by the later decision of the Tax Court in Rowan v. Com'r, 1954, 22 T.C. 865.

5. It is, however, not necessary to decide whether the value of the building at the date of death was included in the taxable estate upon which the estate tax was computed. The decedent's interest in the property was returned as follows: "38 story office and loft building (built by lessee, Tanager Construction Corporation) 1400 Broadway, New York City, Section 3, Block 814, Lot 19 $3,-350,000 Rent accrued to 5/2/41 $42,710.-20" Two appraisals were submitted on behalf of the fiduciaries: one by Francis K. Stevens who described the 1400 Broadway property by street number as he uniformly did with respect to all the real property included in the taxable estate and ascribed a value thereto of $3,-700,000 and another by Robert W. Phillips who described said property as follows: "Premises #1400 Broadway, Borough of Manhattan, City of New York, a parcel of land at the northeast corner of 38th Street and Broadway, fronting 98 feet on Broadway, 200 feet on 38th Street and running through to 39th Street, with frontage of 75 feet on that street, which parcel was improved by a tenant under a long term lease with a 35-story fireproof skeleton steel construction office and show-room building. Said property is described on the Tax maps of the City of New York as Section 4, Block 814, Lot 19, and was assessed for tax purposes for the year 1940/41 as follows: Total Land & Building $6,150,-000," and ascribed a value thereto of $3,000,000. This description varies from the one almost uniformly used by this appraiser in describing each of the other parcels he appraised, e. g. "Premises 402-A Fifth Avenue, Borough of Manhattan, City of New York, consisting of an 8-story and basement fireproof skeleton steel constructed structure, situate at the southwest corner of 37th Street and Fifth Avenue, on a plot fronting 65 feet 4¼ inches on Fifth Avenue and 141 feet 6 inches on 37th Street, with a maximum

Trust Co. of New York v. Helvering, 1938, 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104; May v. Heiner, 1929, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826. Since the original lessor admittedly had no basis for depreciation his heirs stand, so far as investment status is concerned, in the same position as the decedent; they did not acquire such status by virtue of the payment of an estate tax. The court, therefore, is constrained to find that plaintiffs fall without the intendment of § 23(*l*) of the 1939 Code.

■ Furthermore, plaintiffs have not shown that they have an interest which will in fact be lost with the passage of time. They urge the existence of a depreciable interest but an examination of the property rights they inherited does not support that conclusion. Plaintiffs inherited the fee subject to the lease, the right to receive the ground rentals reserved by the lease, and a reversionary interest in the building itself. Their interest in the building is restricted to a right to occupy it some 32 years after the crucial date in 1941. It is plain that such right suffers no diminution in value as a result of the passage of time; on the contrary, the value of the right must increase as the time for its actual enjoyment advances. This reversion is the only interest which plaintiffs have in the building as such; and as pointed out above, it is not depreciable.

■■ The fact that by the terms of the lease technical legal title in the building rests in the lessor or his successors is not determinative for tax purposes of the actual economic interests which were retained by the land owner. It is well established that "Federal income taxes are based on reality not form, on fact not fancy, on substance not seeming. See, Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886; Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 69 L.Ed. 897; Roberts v. Commissioner of Internal Revenue, 9 Cir., 176 F.2d 221, 225, [10 A.L.R.2d 186]." United States v. Maryland Jockey Club, 4 Cir., 1954, 210 F.2d 367, 371. See also, Weiss v. Stern, 1923, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001; United States v. Phellis, 1921, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180. Beneficial ownership of the building was in the lessee. It is the lessee who would receive the proceeds representing the value of the structure of any award allocable to the building if the property were taken by the right of eminent domain (Article 4, para. 14 of the lease); and if the building were destroyed by fire it is the lessee who would receive the "balance of * * * insurance moneys remaining after the reconstruc-

---

depth of 98 feet 9 inches on the westerly line." which reasonably supports an inference that in the case of the 1400 Broadway property he was appraising the land only. In the Revenue Agent's tentative determination of the value of the gross estate, the 1400 Broadway property was assigned a value on the optional valuation date of $3,600,000. The report of the Agent discussed the method of arriving at this valuation as follows: "Item 40, Schedule A: 1400 Broadway, New York City. This is considered, by the Executors, to be their best property and the reason for such an opinion is the fact that they are receiving a net rent from the land of $300,000 per annum. Decedent did *not* own the building. The present term of the lease on this property expires on April 30, 1952." After a conference with the taxpayers the value assigned to the 1400 Broadway property in the Revenue Agent's final

determination was $3,400,000. It seems fairly clear that the taxing authorities did not include the value of the building in the taxable estate and that they proceeded on an erroneous assumption that the lease by its terms expired April 30, 1952 rather than April 30, 1973. To the extent that the "premium value" of the lease was taxable it seems equally clear that two thirds of that value escaped the impact of the tax. This obviously is not the occasion to comment on the obligation of a taxpayer, or his counsel, who has full knowledge of the facts to point out to the Revenue Agent with whom he is dealing the Agent's misconceptions thereof. It is clear, however, that the predicate of plaintiff's argument that they have depreciable interest by virtue of the payment of an estate tax on the value of the building lacks support in the evidence.

tion is completed * * *" (Article 4, para. 3 of the lease). These provisions serve as reinforcement for the view that actual beneficial ownership is entirely in the lessee. The provision for title in the lessor does not create a right to depreciate the cost of the building which would otherwise not exist. Realistically, the principal difference between title remaining in the lessee who built the structure or in the owner of the land upon which it was erected is the right to remove it at the expiration of the term of the lease. Being relieved of the duty to do so in the instant case probably redounds to the benefit of the lessee since the cost of demolition might well exceed the value of the salvage. In 1941 the only interest the lessor or his successors had in the building was the then value of the anticipated reversion, a right which at that time was worth very little. Even, therefore, if taxpayers' argument that they are to be treated as purchasers, even though neither they nor their predecessor in interest made an investment, were to be accepted, they would still not be entitled to the deductions they ask in their claims for refund since their interest in the building is limited to the value of the reversion, whose market value, had it been proven, would undoubtedly be very small, and which taxpayers have not shown would be lost through the effects of time.

The cases cited by plaintiffs through which they seek to demonstrate a depreciable interest do not support the proposition for which they were advanced. Plaintiffs attempt to draw an analogy between those cases which involve purchasers for value of the fee and the building subject to the lease and themselves.[6] An extension of these decisions to the instant case is not warranted. The crucial distinguishing factor is the payment of a purchase price or the existence of an investment, not present here, to which type of transaction the statute was meant to apply.

More directly in point are the cases cited by plaintiffs which treat with the depreciation problems of legatees who inherited land and building subject to a lease, much as taxpayers here. These cases, however, are no longer authority for plaintiffs' argument. On the contrary, every case to which our attention has been directed which dealt with this issue has either ruled that the heirs of a lessor who had no cost basis are not entitled to a depreciation deduction[7] or, having held to the contrary the case has either been reversed[8] or overruled by the court rendering the decision.[9]

■ Plaintiffs have laid much stress on the fact of newly acquired basis but have failed to point out how they meet the requirement of § 23(l) that the property for which the deduction is sought be held for the production of income. Their income is derived solely from the ground rentals. Income which is a product of the use of the structure and the rental of various parts thereof inures to the ben-

---

6. Millinery Center Building Corp. v. Commissioner, 2 Cir., 1955, 221 F.2d 322, affirmed, 1956, 350 U.S. 456, 76 S.Ct. 493, 100 L.Ed. 545; McCulley Ashlock v. Commissioner, 1952, 18 T.C. 405; Annex Corporation v. Commissioner, 1943, 2 T.C.M. 167.

7. Rowan v. Com'r, 1954, 22 T.C. 865, where in a case closely analogous to the one at bar the deduction was not allowed, saying: "She was receiving no rental from the building; she had no investment in the building. Ground rental was all that the heirs of Ellen Rowan, including petitioner, received from the property * * *. The rental income from the building was being received by the lessee

who had erected the building on the leased land at his own expense. The lessee was the one to whom annual depreciation deductions on the cost of the building were properly granted."

8. Moore v. Commissioner, 1950, 15 T.C. 906, reversed & remanded, 9 Cir., 1953, 207 F.2d 265, certiorari denied 347 U.S. 942, 74 S.Ct. 637, 638, 98 L.Ed. 1091; Pearson v. Commissioner, 1949, 13 T.C. 851, reversed & remanded, 5 Cir., 1951, 188 F.2d 72, certiorari denied, 1951, 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648.

9. Currier v. Com'r, supra; Pearson v. Com'r, 13 T.C. 851, expressly overruled by the decision in the Rowan case, supra.

efit of the Tanager Construction Co., the lessee. Plaintiffs do not hold the wasting property for the production of income and are, therefore, not entitled to the statutory exclusion. First National Bank of Kansas City v. Nee, 8 Cir., 1951, 190 F.2d 61, 40 A.L.R.2d 423; Rowan v. Com'r, supra.

Sustaining plaintiffs' position would result in an unwarranted depletion of the Treasury. The lessee is properly taking depreciation deductions on his investment in the building and will be entitled to continue to do so until his entire basis has been recovered. To allow plaintiffs to also take deductions on what would essentially be the same investment deprives the Treasury of revenue to an extent not envisioned by Congress.

With respect to the taxpayers' second theory, the Government contends that the plaintiffs are precluded from basing their claim to relief thereon. The Government argues that under the claim as filed they are restricted to proceeding on a theory of depreciation on the value of the building and may not advance a theory grounded on an allowance for amortization of the "premium value" of the lease.

The claim for refund filed by each of the taxpayers is substantially similar to that of the others and reads in part as follows: "Accordingly, under Sections 113(a) (5) and 23 [*l*] (1) (2) the taxpayer is entitled to depreciation based on the value of the building on May 2, 1941, the date of death of Robert Walton Goelet. This is also in accordance with the decided cases of Charles B. Currier v. Commissioner, 7 T.C. 980 * * * and of Charles Pearson Jr. v. Commissioner, 13 T.C. 851."

■ ■ Absent waiver of the legal requirements by a competent authority the taxpayer may not recover if he has failed "to set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. 39.-22–31(b) (1953). Strict compliance with the terms of the Regulations and the statute is demanded as a condition to bringing suit against the government. Nemours Corp. v. U. S., 3 Cir., 1951, 188 F.2d 745.

The claim as filed makes no mention of the amortization theory or of facts which could be construed to support same. The entire thrust of plaintiffs' arguments at that point was directed toward a depreciation deduction for the building. If plaintiffs have laid the requisite jurisdictional basis for presentation of their alternative argument, it must be found elsewhere than in the claim itself. Plaintiffs direct us to their filed protests and to an alleged conversation between their counsel and an Internal Revenue Agent-Conferee.

■ Plaintiffs argue that by citing the Tax Court decision of the Moore case, supra, in their protest, they informed the taxing authorities that they were claiming under a theory of amortization of the "premium value" of the lease. This position is groundless. The Tax Court opinion upheld the depreciation theory and found arguments in support of the amortization of the leasehold "premium value" unconvincing. More than two years after the filing of the protest the Court of Appeals reversed Moore and accepted the amortization theory. The taxpayers' counsel does not claim to have been prescient in 1951 and to have anticipated the Court of Appeals' subsequent reversal. Neither is the suggestion made that the Commissioner was possessed of such prescience. In the protest taxpayers urge that upon the authority of the Moore case "the taxpayer has a basis for depreciation and is entitled to depreciation based on the value of the building as fixed in the Estate Tax Return". The refund claims similarly are entirely predicated on the claimed right to depreciation on the value of the building. The protests as well as the claims for refund do not once mention the alternative theory now urged upon this Court. Not only was such reference lacking but there was also no intimation that a "premium value" attached to the lease nor the alleged amount thereof. If

the taxpayer at the time of the filing of the claim or protest entertained the views implicit in the alternative ground for relief here, one is left to conjecture whether their silence might have been influenced, in whole or in part, by the fact that a claim based on that theory would have necessitated the disclosure to the Commissioner of the misconception under which he was laboring with respect to the expiration date of the lease (see footnote (5)). That said theory is an afterthought which was never timely urged is inescapable.

The further ground advanced in support of the alleged waiver of the deficiency of the claim, i. e., the conversation between a representative of the taxpayers and an Internal Revenue Agent-Conferee, which took place more than a year prior to the Moore reversal, is so tenuous as to merit the characterization frivolous. Plaintiffs' witness, Thomas P. Ford, testified that the Revenue Agent did not suggest any defect in the claim for refund as a basis for the claim to *depreciation* and that they discussed the claim *as filed* on the merits, and when asked: "Did the theory that the heirs of a lessor are precluded from depreciating the improvements and must instead depreciate the value of the lease enter into your discussion with the Treasury representatives before the claims for refund were rejected?" he replied "No".

I find that the conversation relied on by taxpayers dealt with the subject of basis and depreciation of the building value and that the alternate theory of amortization of the "premium value" of the lease did not enter into their discussion.

This case must be governed by the rule in Angelus Milling Co. v. Commissioner, 1945, 325 U.S. 293, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619:

"The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission. We do not think that the petitioner has made out such a case here. * * * [I]t is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund. The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim."

Plaintiffs are barred from relying on the alternative theory of amortization of the "premium value" of the lease since this ground was not made part of their claim nor was that defect waived. See also Real Estate-Land Title & Trust Co. v. United States, 1939, 309 U.S. 13, 60 S. Ct. 371, 84 L.Ed. 542; United States v. Felt & Tarrant Mfg. Co., 1931, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025.

Three of the taxpayers filed supplemental claims for refund in respect of their 1948 taxes. During that year each of the three claimants was 21 years or more of age and under the terms of testator's will the entire net income of the trusts was required to be distributed to them. It is contended that the trustees inadvertently failed to make certain deductions from gross income on account of various expenses of keeping the testator's residence at Newport, R. I. "insured and in repair and of replacing any articles of personal property used in connection therewith which may become worn out or lost or destroyed." [10] (Article 4th of the will.)

10. By the terms of the Will the testator's wife is given the free use and enjoyment of such property during her life.

The parties stipulated as follows:

"The expenses incurred in maintaining the property for the year 1948 aggregated $22,583.71, itemized as follows:

| Items | Amount |
| --- | --- |
| Insurance | $ 345.10 |
| Utilities and Fuel | 2,590.94 |
| Gardening | 4,896.96 |
| Wages | 5,890.00 |
| Repairs: carpentry plumbing electrical | 2,537.14 |
| Automobile | 2,170.42 |
| Painting, plastering and decorating | 4,003.66 |
| Miscellaneous | 149.49 |
| Total | $22,583.71" |

No further proof was offered at the trial in support of the supplemental claims. Upon this state of the record the Court finds that there is not sufficient evidence to justify their allowance. To point out but one vice which permeates this claim, there was no proof offered as to the services rendered by the recipient(s) of the $5,890 wages. Were they in connection with repairs or replacements which would constitute expenses directed by the testator to be charged to his general estate or were they wages paid to Mrs. Goelet's cook or personal maid?

Further, the stipulation, it is to be observed, refers to expenses incurred in "maintaining the property". Article Fourth of the Will makes no reference to expenses of "maintaining" and operating the property. This omission is not without significance since in the very next article of the Will by the terms of which testator bequeathed to his widow an estate for life or until remarriage of his estate in France known as "Sandricourt", testator authorized his Executors and Trustees to pay out of his general estate all expenses of "maintaining and operating the same".

"[T]he presumption is that taxes paid are rightly collected upon assessments correctly made by the Commissioner, and in a suit to recover them the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." Niles Bement Pond Co. v. United States, 1930, 281 U.S. 357, 50 S.Ct. 251, 252, 74 L.Ed. 901. See also United States v. Anderson, 1925, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Craig v. Thompson, 8 Cir., 1949, 177 F. 2d 457. One is left only to conjecture that the expenditures scheduled in the stipulation fall within the directions contained in Article Fourth; an inadequate predicate for the allowance of the refund.

The foregoing shall constitute Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52(a), 28 U.S.C.A.

Judgment for defendant.