Rosalie M. SCHUBERT, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 8164.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1960.

Decided Jan. 17, 1961.

574

LeRoy R. Cohen, Jr., Richmond, Va. (John F. Kelly, Richmond, Va., on brief), for petitioner.

Fred E. Youngman, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and STANLEY, District Judge.

BOREMAN, Circuit Judge.

This case is here on petition to review the decision of the Tax Court of the United States which affirmed the determination by the Commissioner of Internal Revenue of deficiencies in federal income taxes of the Petitioner. The facts hereinafter stated were stipulated and accordingly found by the Tax Court. Petitioner will be referred to as taxpayer.

Taxpayer's mother, Gazelle K. Millhiser, hereinafter sometimes referred to as testatrix or lessor, owned real estate in Richmond, Virginia, described as 409 East Broad Street, located about sixty-one feet from the intersection of Broad and Fourth Streets, having a frontage of 19.04 feet and extending 138 feet to an alley in the rear. On October 2, 1941, testatrix leased this property to G. C. Murphy Company, hereinafter called Murphy. At about the same time Murphy entered into two other leases with the owners of adjacent properties, each of the three leases being for a term ending January 31, 1973. Murphy was authorized to demolish the building on each of the three properties, use or sell the salvage materials and construct one building on the three parcels in accordance with certain plans and specifications.

The Millhiser lease began November 1, 1944, and provided for rentals thereafter of $1,000 per month through January 1948, §1,145.83⅓ per month thereafter through January 1958, and $1,208.-33⅓ per month thereafter through January 1973. Some of the other provisions of the lease may be summarized as follows:

(a) Murphy was obligated to reimburse lessor for all real estate taxes and charges against the property during the term in excess of $2,445.91 annually and for the cost of fire insurance on the improvements during the term in excess of $184.09 annually.

(b) Murphy agreed to surrender and deliver to lessor, at the end of the term, any new building which might be erected on the property, unencumbered by it, and in as good order, repair and condition as when completed, ordinary wear and tear and accidents by fire or other casualty excepted.

(c) Murphy agreed, at the end of the term, to erect individual walls along the boundary lines of the property, to restore separate water, sewer and power lines and other facilities so as to make the building upon the demised premises a separate rentable unit.

(d) Murphy was to make all exterior and interior repairs during the term.

On or about May 1, 1947, demolition of existing improvements was begun by Murphy and was immediately followed by the construction of one department store building on all of the several demised properties. This building, consisting of a basement and five stories, was completed about July 1, 1948, at a total cost of $1,442,969 and had an estimated useful life of fifty years from July 1, 1948.

The estimated cost of that part of the building constructed on the property of testatrix was from $150,000 to $180,000 and was borne by Murphy, except to the extent of salvage value recovered by Murphy from the demolished building.

The cost to testatrix of the old improvements upon her property at the time of demolition on May 1, 1947, after depreciation was $6,200. For income tax purposes she claimed on account of depreciation of the demolished improvements a deduction at the rate of $240.77 annually from May 1, 1947, until her death.

Testatrix died on August 31, 1953, and, by her will, nominated her son, hereinafter called "trustee," as executor thereof and as trustee of the residual estate. Pursuant to the authority conferred by the will, trustee allocated the property at 409 East Broad Street to the residual estate devised to the taxpayer in trust for life. A federal estate tax was paid on this property at an appraised value of $200,000.

The trustee paid to taxpayer the annual income as computed by him since

August 31, 1953, and, as her attorney-in-fact, filed income tax returns for her for the years in question. These returns report as income the net rents from 409 East Broad Street, computed by the trustee, as follows:

|  | 1953 | 1954 | 1955 |
|---|---|---|---|
| Gross rents | $4,583.32 | $17,422.61 | $17,422.31 |
| Less: |  |  |  |
| Real Estate Taxes |  | 6,118.56 | 6,118.22 |
| Insurance | 7.54 | 12.32 | 93.59 |
| Commissions | 275.00 | 825.00 | 825.00 |
| Depreciation | 1,666.67 | 5,000.00 | 5,000.00 |
| Net rents | $2,634.11 | $ 5,466.73 | $ 5,385.50 |

(Note: We are not concerned here with the deductions for real estate taxes for the years 1954 and 1955.)

———◆———

The Commissioner disallowed the deductions for depreciation as shown above for the years in question, thereby increasing the net income distributable to taxpayer from the trust estate. It is this adjustment which alone gives rise to the asserted deficiency.

Taxpayer contends that she should be allowed a deduction for depreciation in each of her taxable years (adjusted for 1953 from the date of her mother's death to end of year):

(1) In an amount equal to the value of the improvements as of August 31, 1953, as determined for estate tax purposes, divided by the number of years of then remaining useful life; or

(2) In the alternative, in an amount equal to the commuted or capitalized value at the date of her mother's death of the right to receive favorable premium rentals, divided by the number of years remaining of the term of the lease. (Testimony was presented to show that such commuted or capitalized value at August 31, 1953, was not less than $38,-685 and that the lease then had 19⁵⁄₁₂ years to run.)

■ The Tax Court rejected both contentions and upheld the Commissioner.[1] We find no error.

The statutes asserted by taxpayer as applicable here in support of her claims to an allowance for depreciation are set forth below.[2]

1. 1960, 33 T.C. 1048.

2. Following are the asserted applicable sections of the Internal Revenue Code of 1954, but the corresponding sections of the Code of 1939 and prior revenue acts were not substantially different. (All references are to Title 26 U.S.C.).
  Section 167(a), (Sec. 23(l), 1939 Code):
  "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
  "(1) of property used in the trade or business, or
  "(2) of property held for the production of income."

Section 167(f), (Sec. 114, 1939 Code):
  "The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property."
  Section 167(g), (Sec. 23(l), 1939 Code). The 1939 Code is silent with respect to estates, but the same principle was recognized and applied:
  "In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust, the allowable de-

It is taxpayer's first theory that she acquired a basis for depreciation purposes upon the death of testatrix; that it is not the estate tax which gives rise to a "basis" in the heir but rather the then fair market value of the asset upon which the tax is paid; that of the $200,000, which was the appraised value of the land and improvements for estate tax purposes, approximately one-half, or $100,000, was the value of the Murphy-constructed building on the land; that when a taxpayer has a "basis" in an income-producing asset which diminishes in value by lapse of time through wear, tear, obsolescence or exhaustion, such taxpayer is entitled by *statutory right* to recover that basis by a reasonable allowance for depreciation over the remaining period of useful life; that it is simple justice to permit deductions from income sufficient to restore wasting principal; that section 167 of the 1954 Code and section 23 of the 1939 Code, allowing depreciation, refer to "property" which may be a physical building or a favorable leasehold; and, if it is once established that taxpayer has a basis in a wasting asset, the sole remaining problem is the appropriate measure to be applied.

An early line of Tax Court decisions supported the theory that the prescription of a "basis" in and of itself would permit the allowance of a deduction for depreciation. In the first such case involving depreciation of inherited leased improvements constructed by the ancestor's lessee under a long term lease, Charles Bertram Currier, 1946, 7 T.C. 980, it was held at page 984:

"The basis of inherited property is accordingly not cost * * * and to say that a property cost the taxpayer nothing makes no contribution to the solution of the present question. As opposed to cost, the basis of property acquired by devise is categorically fixed by statute as fair market value on the date of acquisition. Internal Revenue Code, sec. 113(a) (5) [now § 1014(a)]. Hence, if we can discover the fair market value of the property in question at the date of decedent's death, Augustus v. Commissioner (C.C.A., 6th Cir.), 118 Fed. (2d) 88 [38] (or the figure at which it was returned for estate tax purposes, which is recognized as the equivalent, Regulations 103, sec. 19.113(a) (5)) the upshot would ordinarily be its basis for depreciation in petitioner's hands, without any reference to its 'cost'. Having acquired a basis by the incidence of the estate tax, the gradually disappearing value of a wasting asset can not be replaced except by periodic depreciation adjustments."

Two subsequent Tax Court decisions involving parallel fact situations ap-

duction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. In the case of an estate, the allowable deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each."

Section 1011, (Sec. 113(b), except (1–4), 1939 Code):

"The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter * * *), adjusted as provided in section 1016."

Section 1014(a) (the applicable section of the subchapter) (Sec. 113(a) (5), 1939 Code):

"* * * the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be the fair market value of the property at the date of the decedent's death * * *."

Section 1014(b), (Sec. 113(a) (5), 1939 Code):

"For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

"(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent; * * *."

proved and followed the Currier decision and adopted the language as above quoted. J. Charles Pearson, 1949, 13 T.C. 851; Mary Young Moore, 1950, 15 T.C. 906. Each of these subsequent approvals of the Currier decision was reversed on appeal. Commissioner of Internal Revenue v. Pearson, 5 Cir., 1951, 188 F.2d 72, certiorari denied 1951, 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648; Commissioner of Internal Revenue v. Moore, 9 Cir., 1953, 207 F.2d 265, certiorari denied 1954, 347 U.S. 942, 74 S.Ct. 637, 98 L.Ed. 1091. In reversing the Moore decision, the Ninth Circuit clearly dispelled the notion that "basis" alone would permit depreciation, stating:

"The Tax Court properly noted that section 113(a) (5) [now § 1014(a)] would operate to supply, for an inherited * * * interest, a 'basis' which had theretofore not existed * * * [b]ut a 'basis' is only one of the factors which must exist before depreciation may be claimed. More important is the necessity of a 'depreciable interest' in exhausting and deteriorating property. If the taxpayer's interest is of such character that it is not affected by the deterioration, then it is not of a depreciable nature. That the provision defining basis is by itself insufficient to authorize the deduction was well stated by the Court of Appeals for the Eighth Circuit in First National Bank of Kansas City v. Nee, 190 F.2d 61, 64, [40 A. L.R.2d 423] as follows: 'It must at once be obvious that unless an item of property in respect of which depreciation has been claimed is properly within the reach of the * * statute, those further provisions of the law are quite irrelevant which serve merely to define the basis upon which depreciation, validly asserted, is to be computed. The prescription of a depreciation basis presupposes, but does not amplify, depreciability.'

"* * * Sec. 113(a) (5), while providing a 'basis', does not create a depreciable interest where none would otherwise exist." 207 F.2d at page 269.

Cf. Helvering v. Bruun, 1940, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; M. E. Blatt Co. v. United States, 1938, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167. The decision of the Tax Court in the instant case disallowing the taxpayer's claim for depreciation of the building for each of the years here in issue is further supported by the following cases: Friend v. Commissioner, 7 Cir., 1941, 119 F.2d 959, certiorari denied 1941, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 538; First Nat. Bank of Kansas City v. Nee, 8 Cir., 1951, 190 F.2d 61; Goelet v. United States, 2 Cir., 1959, 266 F.2d 881, affirming per curiam, D.C.S.D.N.Y.1958, 161 F.Supp. 305.

The cases hereinbefore cited, namely, Friend v. Commissioner, Commissioner of Internal Revenue v. Pearson, First Nat. Bank of Kansas City v. Nee, and Commissioner of Internal Revenue v. Moore, differ from the instant case only in the fact that in each of those cases the estimated useful life of the tenant-constructed building, for depreciation purposes, expired prior to the expiration date of the lease on the premises at date of death, while here the estimated useful economic life of the building extends beyond the expiration date of the lease. However, Goelet v. United States, supra, is not even subject to this distinction and the courts which considered the case found this difference in fact to be without legal significance.

In Albert L. Rowan v. Commissioner of Internal Revenue, 1954, 22 T.C. 865, decided after the reversal of the Tax Court in the Pearson and Moore cases, that court re-examined its position, concluded that the Fifth Circuit in Commissioner of Internal Revenue v. Pearson, supra, and the Ninth Circuit in Commissioner of Internal Revenue v. Moore, supra, stated the correct rule of law, and specifically overruled its prior decisions in the Currier, Pearson and Moore cases. In the Rowan case, which involved a lessee-constructed building

and the claim of taxpayer to depreciation, the Tax Court disallowed depreciation and held:

"She [taxpayer-petitioner] was receiving no rental from the building; she had no investment in the building. Ground rental was all that the heirs of Ellen Rowan, including petitioner, received from the property. During the taxable years they were not receiving any rental income from the building itself. The rental income from the building was being received by the lessee who had erected the building on the leased land at his own expense. The lessee was the one to whom annual depreciation deductions on the cost of the building were properly granted." 22 T.C. 874.

█ The principles underlying depreciation allowances are too well settled to merit extended discussion here. For present purposes, we hold that the applicable statute [3] limits the depreciation deduction to (1) property used in the trade or business of the taxpayer, or (2) property held by the taxpayer for the production of income.[4] Thus, before any deduction for depreciation can be allowed, the taxpayer must first establish that she has an interest in "property" with respect to which the allowance of depreciation is authorized by the statute. Unless the property claimed to be depreciable is properly within the reach of the applicable statute, that is, *property used in the trade or business of the taxpayer, or property held by the taxpayer for the production of income*, the further provisions of the law are quite irrelevant which serve merely to define the basis upon which the depreciation, validly asserted, is to be computed. First Nat. Bank of Kansas City v. Nee, 8 Cir., 1951, 190 F.2d 61.

█ The taxpayer's contention that she is entitled to depreciation deductions with respect to the Murphy-constructed building is predicated solely upon the erroneous proposition that she (or rather the trust estate) acquired a new *basis* in the property in issue by reason of the devise from her mother, the testatrix. As made abundantly clear by the above cited and other decisions, the statutory provisions prescribing the "basis" for computing depreciation do not also create depreciability. "Depreciation allowances are limited to depreciable property and exclude assets not of that character." Friend v. Commissioner, 7 Cir., 1941, 119 F.2d 959, 960. Accordingly, in order to sustain her claim to depreciation allowance on the Murphy-constructed building here involved, the burden is upon the taxpayer to prove that she has a depreciable interest in that building, which she has failed to do. All she could acquire by inheritance from her mother, the testatrix, was such interest as her mother had to devise. At the time of her death, the testatrix owned in fee the improved Broad Street real property subject to a long term lease. As such owner, the testatrix did not acquire any interest, taxwise, in the Murphy-constructed building upon its completion. M. E. Blatt Co. v. United States, 1938, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167. She had only the right to recover the loss of an existing improvement which was demolished to make way for the new building. The taxpayer's interest in the Murphy-constructed building could come into existence, taxwise, only upon termination of the lease, at which time she could claim title and possession. Helvering v. Bruun, 1940, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864.

Indeed, all this taxpayer, or the trust estate, acquired under the will of the

---

3. Section 23(*l*) of the 1939 Code; Section 167(a) of the 1954 Code.

4. Other sections of the statutes, notably Sections 23(n) and 114(a) of the 1939 Code, and Section 167(f) of the 1954

Code, prescribe the so-called "basis" upon which such allowance shall be computed, and the *amount* of the allowance for any given year is determined by other factors, such as useful life, pertaining to the particular property in issue.

testatrix was a life estate in improved real property subject to a long term lease, plus an unencumbered life estate in the property, including the Murphy-constructed building, at the expiration (or earlier termination) of the lease if she should survive such termination.[5] Taxpayer's income is derived solely from the ground rentals. Income which is the product of the use of the structure inures to the benefit of the lessee, Murphy, the entity which is truly holding the building for the production of that income. Taxpayer does not hold the wasting property for the production of income and is, therefore, not entitled to the statutory exclusion. First Nat. Bank of Kansas City v. Nee, 8 Cir., 1951, 190 F.2d 61.

### Premium Rentals

If the claimed right to depreciate the building should be denied, in the alternative taxpayer theorizes: That, at the date of death of testatrix, the rental provided by the lease was higher than the then fair rental value of the land, the valuation of the property was higher than the value of the land subject to normal rentals, and thus taxpayer acquired a basis in a favorable leasehold which will end with the lease; that, to the extent of these excess or premium rentals, she has acquired, and is holding, as capital or principal, for the production of income, an asset wasting by lapse of time since, upon and after the termination of the lease, the land will yield only its lesser fair rental value; that at that time the premium rentals will have been exhausted and will vanish.

It appears that only two courts, other than the Tax Court, have considered and passed upon the question raised by taxpayer's alternative claim. In Milton H. Friend et al., Trustees, 40 B.T.A. 768, the same argument as here advanced by taxpayer was rejected. The Court of Appeals for the Seventh Circuit affirmed. Friend v. Commissioner, 1941, 119 F.2d

959. There the executors of a decedent lessor, who had demised premises to tenants who erected buildings thereon, contended that the excess valuation placed upon the leases over what would have been a reasonable rental value of the land itself, was an exhaustible asset on which they were entitled to depreciation, amortization or exhaustion for income tax purposes. The taxpayers asserted that they had acquired a basis for amortization by virtue of section 113 (a) (5) of the Revenue Code of 1939 (now § 1014(a)). At 119 F.2d 961, the Court said:

"It is plain from a reading of the statute that what is meant is to give the asset, whatever it may be, a basis for valuation for the purpose of determining gain or loss for income tax purposes in the event of a future sale of the asset. The statute can not be construed, even in conjunction with the valuation for estate tax purposes and the payment of that tax, to place the petitioners in the position of a purchaser of the leaseholds for a valuable consideration. Therefore, the contention of the petitioners must fail, and their other contentions must fall with it."

In Mary Young Moore, 1950, 15 T.C. 906, the Tax Court, under facts sufficiently similar to those in Friend v. Commissioner, supra, to raise the question of taxpayer's right to capitalize and claim deduction for premium lease rentals, again refused to allow the deduction. However, on appeal to the Ninth Circuit, Commissioner of Internal Revenue v. Moore, 1953, 207 F.2d 265, that court disagreed not only with the Tax Court's decision on this point but also noted its disagreement with the decision and opinion of the Seventh Circuit in Friend v. Commissioner, supra.

Thus we find decisions of two Circuits, one in apparent irreconcilable con-

---

5. While taxpayer had only a life estate under the trust provisions of her mother's will, by the terms of section 167(g) any proper depreciation deduction would be computed and allowed as though the life tenant were the absolute owner.

flict with the other on this question, although in agreement in denying the taxpayer's right to claim depreciation of the lessee-constructed building. The problem created by this conflict between Circuits has not been illuminated by the failure of the Supreme Court to grant certiorari in the two cases, namely, Friend v. Commissioner, supra, and Commissioner of Internal Revenue v. Moore, supra.

As noted by the Tax Court in its opinion in the instant case, the Ninth Circuit in Commissioner of Internal Revenue v. Moore, supra, apparently held that there is no difference between a transfer by death or purchase; that the devisee of land is to be considered a purchaser of the lease paying a bonus or premium for the acquisition of the *favorable features* of the lease, which he should be allowed to recover as his "investment" in the property by depreciating a portion of the rents he will receive over the remaining period of the lease. At 207 F.2d page 277, the Court said:

"What we are here considering, as a possible item of property for depreciation, is not the lease, as such, but rather *the favorable aspects or part of the lease.*" (Emphasis supplied.)

But in Commissioner of Internal Revenue v. Moore, supra, we find that the lease there involved was for a term of ninety-nine years, a period much greater than the estimated useful life of the building constructed by the lessee. Thus no significance could be attached to the right of reversion. At the termination of that lease, the right to claim possession and control of a building, the useful life of which had been fully exhausted, would have no real value. Theoretically, such a building could then be a burden rather than a valuable asset. In the instant case, the Murphy-constructed building will have a remaining period of useful life following the termination of the lease and thus the right to claim ownership, possession and control of the building is a valuable right.

At the trial before the Tax Court, taxpayer adduced testimony to the effect that the combining of the three separate properties into one unit gave the single structure "corner influence," thus overcoming the handicap of the narrow frontage of the 409 East Broad Street property; that although, as leased with other properties, the building had an estimated useful economic life of fifty years, it would, at the end of the lease term if not occupied with other properties by a common tenant, revert to taxpayer as a separate narrow structure, its practical use for the remainder of its useful shortened economic life being thus substantially restricted and diminished. Further evidence was presented to show that, although the assessed value of this property for local taxes in 1953 was $272,640, approximately equally apportioned between the land and the improvement, the value of the land free of the lease would have been $154,000 with a fair net annual rental of $7,700; that the excess portion of the actual net annual lease rental over the sum of $7,700 was, in fact, a "premium" rental attributable to the lease and the building constructed pursuant to lease terms.

Taxpayer offered the expert testimony of a witness who, no doubt, was well qualified as an appraiser of real property and experienced in rental operations and values in the vicinity of the property here involved. He gave as his opinion that, at the termination of the lease, the income producing value of the building would be less than the rental value created by the Murphy lease. But he admitted that his testimony was highly speculative. In giving his opinion he was obviously assuming as a fact that, at the termination of the lease, the building would be returned and surrendered as a single and separate unit having no connection with the other properties included in the lease.

When the Murphy lease expires in 1973, there are several possibilities but they cannot be determined by gazing into a crystal ball. In Goelet v. United

States, D.C., 161 F.Supp. 305, 309, the Court said:

"It is well established that 'Federal income taxes are based on reality not form, on fact not fancy, on substance not seeming. See, Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886; Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 69 L.Ed. 897; Roberts v. Commissioner of Internal Revenue, 9 Cir., 176 F.2d 221, 225 [10 A.L.R.2d 186].' United States v. Maryland Jockey Club, 4 Cir., 1954, 210 F.2d 367, 371. See also, Weiss v. Stern [Stearn], 1923, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001; United States v. Phellis, 1921, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180."

By the same reasoning, the application of tax deduction statutes should not be based on one of several possible assumptions of fact or on mere speculation and conjecture. The Murphy building is constructed on three leased properties subject to the condition that, at the time of return to the owners, it must be remodeled and surrendered as separate rental units, and, *if* strict compliance with the condition is had, it *might* then develop that the income producing value of each unit would be lessened. But it is only reasonable to suppose that the owners of the three separate parcels of land will make every possible effort to utilize the building, for its remaining life, in its most productive form and release to Murphy or lease to another common tenant on terms no less favorable than those of the existing lease. In either event the new terms, conditions and rentals would be matters of negotiation and would doubtless be determined by conditions then existing including demand, desirability of location, business trends and other factors which could not now be reliably forecast; further, it might be very advantageous to Murphy, if not then interested in re-leasing, to pay to each owner a substantial sum in order to be relieved of the great ex-

pense of structural changes and restoration of facilities necessarily involved in dividing the one building into three separate rental units. It is quite conceivable and very probable that, as the termination date of the lease approaches, bringing with it the right of reversion, the taxpayer's interest may be increasing in value rather than wasting by the passage of time.

What we have here said is simply to point up a very cogent consideration weighing against the allowance of amortization of premium rentals, that is, the highly speculative nature of the testimony and the hypothetical assumption that the property may revert in less valuable form. In Commissioner of Internal Revenue v. Moore, supra, the Ninth Circuit recognized the necessity of a wasting of the asset before the allowance of amortization. At 207 F.2d page 277, that Court said:

"Again the intangible property which we here consider must be found to be subject to ultimate exhaustion, if depreciation or amortization is to be allowed. * * If the terms of the lease are such that it could be renewed at any time on the same terms, there will be no exhaustion, or wasting, or wear and tear, and no occasion for depreciation or amortization."

While it is the well settled rule that any doubt or uncertainty as to the application of a statute providing for a tax on income must be resolved in favor of the taxpayer, a different rule prevails where the taxpayer seeks to exempt income from taxation. Deductions from gross income are a matter of grace and a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms. Mays v. Bowers, 4 Cir., 1953, 201 F.2d 401, 402. The burden is squarely upon the taxpayer to bring himself clearly within the statutory provisions authorizing the claimed deduction or exemption. Belser v. Com-

missioner, 4 Cir., 1949, 174 F.2d 386, 389.[6]

We do not hold or intimate that the depreciation statutes here involved are, in themselves, ambiguous. Clearly, the fair market value at the time of the death of testatrix was fixed by the statutes as the basis in the heir or taxpayer determinative of the gain or loss in the event of sale and the basis upon which depreciation, *if otherwise allowable,* may be calculated. The doubt arises as to the applicability of the deduction or depreciation statutes in the factual situation here presented. That such doubt exists is clearly demonstrated by the decisions of the Tax Court and the definitely conflicting decisions of the Seventh and Ninth Circuits.

The Tax Court, in the instant case, disregarded the testimony as to the premium values sought to be attributed to the favorable aspects of the lease and followed its own decision in Milton H. Friend et al., Trustees, supra, and the Seventh Circuit in Friend v. Commissioner, supra. We have previously indicated our disagreement with the proposition that the prescription of a basis can have the effect of creating a depreciable asset or investment where none otherwise exists. But, were we to accept taxpayer's theory that alleged excess or premium rentals should be treated as a separable, depreciable, intangible asset or investment, it is our opinion that the evidence fails to establish the claim of wasting or exhaustion thereof and further, in the factual situation here, any testimony offered in support of such claim could be founded on nothing more than guess, speculation and conjecture.

Until Congress has acted to clear away the confusion arising from this divergence of views as to the meaning, effect and application of the depreciation statutes, or until these questions have been resolved by the highest judicial authority, we can adopt only that which appears to us to be the sounder view, realizing that disagreement with the decision of either the Seventh Circuit or the Ninth Circuit is thus inescapable.

Affirmed.

6. Generally the allowance of deductions does not turn upon equitable considerations but depends on legislative grace. Deputy v. duPont, 1940, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. The deduction must be "plainly authorized." Commissioner of Internal Revenue v. Swent, 4 Cir., 1946, 155 F.2d 513, 517. The rule that ambiguities are to be resolved in favor of the taxpayer does not apply to statutes authorizing deductions. Helvering v. Inter-Mountain Life Insurance Co., 1935, 294 U.S. 686, 689, 55 S. Ct. 572, 79 L.Ed. 1227. In case of doubt, a deduction statute is to be construed against the one claiming under it, notwithstanding the resolution of the doubt may work a disadvantage to the taxpayer. White v. United States, 1938, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172.