Ronald U. Bassett and Pauline V. Bassett, et al. [1] v. Commissioner. Bassett v. Commissioner
Docket Nos. 88240, 89301, 91200-91215, 91217-91220, 91222-91224.
United States Tax Court
T.C. Memo 1963-10; 1963 Tax Ct. Memo LEXIS 334; 22 T.C.M. (CCH) 26; T.C.M. (RIA) 63010; January 11, 1963
Martin G. Dumont, Esq., for the petitioners. Arthur B. Bleecher, Esq., and Richard J. Shipley, Esq., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of petitioners for the year 1958 in the following amounts: Docket
Petitioner
Number
Deficiency
Ronald U. and Pauline V.
Bassett
88240
$ 602.70
Samuel P. and Bernice A.
DeBusk
89301
107.88
Hester Louise Parks
91200
871.71
Joe R. and Margie A.
Anson
91201
270.17
Pauline O'Koren Cornett
91202
$ 593.71
Formerly Pauline
O'Koren
William R. and Helen E.
Giles
91203
422.27
Duane and Helen Morsch
91204
528.48
John D. and Harriet Jeane
Dohanich
91205
105.96
Joann Standish
91206
677.01
Richard A. and Della
Snyder
91207
571.32
Lee W. and Roma Fowler
91208
710.05
Kenneth E. and Evelyn M.
Allen
91209
605.41
Keith G. and Clyta I.
Charles
91210
680.76
Cecil C. and Eula M. Ames
91211
331.18
Caswell L. and Yvonne
Roberts
91212
690.20
Wilbert and Rose L.
Langen
91213
220.78
Barbara R. Hewett
91214
356.57
Jack H. and Margaret
Hoye
91215
576.86
Neoma N. Bowman
91217
373.38
Dorothy F. Sonheim
91218
242.95
Helen S. Orr
91219
489.68
Eva Mae Cage Costello
91220
723.93
Thelma M. Weis
91222
342.00
Leonard L. and Ann K.
Buehler
91223
400.62
Elizabeth L. Hussey
91224
264.46
Total
$11,760.04
*335 The prime issue for decision in the instant cases is the reasonableness of respondent's determination as to tip income of each of the petitioners for the year 1958. A second issue herein concerns the correctness of respondent's action in disallowing certain deductions claimed by some of the petitioners for the cost and care of shoes and uniforms used by them in connection with their work as waitresses. On both issues the individual petitioners have the burden of proving error on the part of respondent. Findings of Fact Petitioners [2] are individuals residing in or adjacent to metropolitan Denver, Colorado. Their returns for the year 1958, all of which were made on the cash basis and for the calendar year period, were filed with the district director of internal revenue, Denver, Colorado, with the exception of Eva Mae Cage Costello, the petitioner in Docket No. 91220, whose 1958 income tax return was filed with the district director of internal revenue, Chicago, Illinois. During the taxable year 1958 each *336 of the petitioners was employed, at least for a portion of the year, as a waitress at the Tiffin Inn, a restaurant located in Denver, Colorado. This restaurant, one of the finest in the city, was noted not only for its cuisine but also for its excellent system of rapid service, originally adopted by Paul Shank, founder of the Tiffin, and continued by the John R. Thompson Co., owners of the business during the year 1958. It was as a result of both the food and the service that patrons often stood in line for a table at the Tiffin. Connected with the Tiffin Inn during the year 1958 was a motel, the Writer's Manor, having about 100 rooms for which the Tiffin supplied whatever room service was required, but through the office of bellmen employed by the motel. Physically, the Tiffin Inn was, during the year in question, divided into four operating divisions, comprised of the dining room, banquet room, cocktail lounge and the coffee house. The dining room had a seating capacity of approximately 180 persons. It was operated on two shifts, luncheon and dinner, except on Sunday, when only one shift sufficied. None of the petitioners herein were employed on the luncheon shift. Employed in *337 the dining room, in addition to waitresses, were busboys whose job it was to remove soiled dishes, push food into the dining room on carts and to generally assist the waitresses, captains or "flame boys" who served flaming deserts, etc., and "pushers" who were female employees whose general duty it was to expedite waitress service by assisting when the waitress was engaged elsewhere. Approximately one busboy was assigned to each two dining room waitresses, receiving from them total tips ranging from $1.00 to $2.50 per night. Neither pushers, nor hostesses, also employed in the dining room, received tips from the waitresses. Some waitresses employed in the dining room had fixed "stations" while others rotated between "stations." These "stations" consisted of seating arrangements for approximately twelve to fourteen persons divided into tables or booths seating two, four or six people. Liquor, in addition to food, was served, and paid for, in the dining room. Waitresses employed primarily in the dining room were also used from time to time to accommodate overflow banquet room business. Payroll records of the Tiffin indicate that dining room waitresses were paid an hourly wage of seventy-five *338 cents. Fourteen of the individual petitioners herein were employed primarily in the dining room. During the year 1958 the Tiffin Inn maintained a banquet facility having a maximum seating capacity of 200 persons and operating on a luncheon and dinner shift. Approximately 20 percent of the total business done in the banquet room during 1958 was attributable to luncheons (including breakfast) and 80 percent to dinners. The regular number of waitresses employed in the banquet room was four, but could vary to as many as eleven depending upon the size of the banquet, the excess over four waitresses being drawn from the dining room staff. Generally, banquet room menus were prearranged, thus lessening the time (as compared with the dining room, where each individual diner might place a different order) required to serve each diner. As a result, banquet room waitresses could each serve from fifteen to twenty persons per banquet. While no percentage of tip was added to the banquet bill, it would appear from the record that few diners left no tip at all. The average luncheon tip was about 10 percent of the total bill, while dinner tips averaged 12 percent. Busboys were employed in the banquet *339 room regularly and bartenders occasionally, whenever liquor was served for an individual party. Both busboys and bartenders, when employed, received tips from the banquet room waitresses. During a portion of the year 1958 the manager of the banquet room also received a share of the waitresses' tips. According to payroll records of the Tiffin Inn for 1958, banquet room waitresses were paid an hourly wage of $1.00. Two of the individual petitioners herein were employed primarily in the banquet room, while others were employed there only occasionally. In addition to the dining and banquet rooms, the Tiffin Inn also maintained a cocktail lounge and a coffee house. Two of the petitioners herein were employed primarily in the cocktail lounge during 1958, where they were paid an hourly wage of eighty-five cents. There is no evidence that they were assisted there by busboys. Under the Tiffin system the lounge was charged with service of alcoholic beverages for all divisions in the restaurant. However, liquor served in the dining room, banquet room or coffee house was paid for in those departments. Only liquor served and consumed in the cocktail lounge or sent out through room service was *340 paid for in the lounge itself. Drinks served to patrons waiting in the lounge for a table in the dining room were usually paid for in the dining room when, having not yet finished their drinks, those patrons were called in to dinner. The cocktail lounge consisted of a bar with stools and a number of tables. A bartender served drinks to be consumed at the bar, whereas waitresses serviced the tables. The evidence would indicate that about 80 percent of the liquor consumed in the lounge itself was at tables served by waitresses, and the remaining 20 percent at the bar. The coffee house division of the Tiffin Inn was operated by three shifts of waitresses from six in the morning until two o'clock at night serving breakfast, lunch, dinner and after dinner patrons. Seven of the petitioners were employed primarily in the coffee house and were paid an average hourly wage of eighty cents. In addition to waitresses, busboys were also employed in the coffee house and they received various amounts from the waitresses. The evidence, including gross sales of the coffee house, shows that considerable business was done in this division. However, the evidence likewise establishes that some portion *341 of this business was of a "carry-out" nature and not handled by waitresses. We find that such "carry-out" business, including the sale of magazines, tobacco, box lunches to be put aboard busses and motel room service, amounted to 10 percent of the total business done in the coffee house. For this 10 percent of coffee house sales the petitioners employed there received no tips. Total sales for the year 1958 for all divisions of the Tiffin Inn were $1,903,327.90. Of this amount $811,275.89 was attributable to sales in the dining room during the evening shift, $584,764.18 was attributable to sales in the coffee house, $108,997.16 to total sales in the banquet room and $159,988.80 to sales in the cocktail lounge. We find from all the evidence, however, that tips averaging 10 percent of sales were left only on gross sales amounting to $730,148.30 in the dining room (Shift No. 2), $467,811.34 in the coffee house, $98,097.44 in the banquet room and $143,989.92 in the cocktail lounge. Ultimate Findings of Fact Petitioners received tips in at least the amounts set forth below during 1958, and failed to report tips as follows: Actual hours
Net sales
worked in
Percentage
upon which
Docket
division per
of hours
a tip of 10%
Petitioner
number
payroll
worked
was left [4]
record [3]
Dining Room. Shift #2 (Total sales subject to tips: $730,148.30; Total
waitress hours: 35,361 1/2)
Allen, Evelyn M.
91209
1624
4.59
$33,513.80
Bassett, Pauline V.
88240
1595.5
4.51
32,929.69
Bowman, Neoma N.
91217
1535.5
4.34
31,688.42
Costello, Eva Mae (Cage)
91220
1774
5.01
36,580.43
Charles, Clyta I.
91210
1881.5
5.32
38,843.89
Fowler, Roma
91208
1662.5
4.70
34,316.97
Giles, Helen E.
91203
1585.5
4.48
32,710.64
Hoye. Mar,aret
91215
1568
4.43
32,345.57
Cornett, Pauline
91202
1586.5
4.49
32,783.66
(O'Koren)
Orr, Helen S.
91219
1021
2.89
21,101.28
Parks, H. Loulse
91200
1844
5.21
38,040.72
Roberts, Yvonne
91212
1925.5
5.45
39,793.09
Snyder, Della
91207
1728.5
4.89
35,704.25
Sonheim, Dorothy F.
91218
969
2.74
20,006.06
Banquet Room (Total sales subject to tips: $98,097.44; total waitress hours:
7,168)
Allen, Evelyn M.
91209
8.5
.12
117.72
Bassett, Pauline V.
88240
4
.06
58.86
Costello, Eva Mae (Cage)
91220
3.5
.05
49.05
Charles, Clyta I.
91210
7
.10
98.10
Hewett, Barbara Rose
91214
1569.5
21.90
21,483.34
Hoye, Margaret
91215
8.5
.12
117.72
Langen, Rose L.
91213
1295.5
18.08
17,736.02
Cornett, Pauline
91202
33.5
.47
461.06
(O'Koren)
Orr, Helen S.
91219
3.5
.05
49.05
Parks, H. Louise
91200
114
1.59
1,559.74
Roberts, Yvonne
91212
6.5
.09
88.29
Sonheim, Dorothy F.
91218
3.5
.05
49.05
Coffee House (Total sales subject to tips: $467,811.34 [6]; Total waitress
hours: 39,382.5)
Ames, Eula M.
91211
1740
4.42
$23,261.92
Anson, Margie A.
91201
1665.5
4.23
22,261.97
DeBusk, Bernice A.
89301
326
.80
4,210.30
Dohanich, Harriet J.
91205
821
2.08
10,946.78
Morsch, Helen
91204
1616.5
4.10
21,577.80
Standish, Joann
91206
1908.5
4.86
25,577.59
Weis, Thelma M.
91222
294.5
.75
3,947.16
Cocktail Lounge (Total sales subject to tips: $143,989.92; Total waitress
hours: 9,642)
Buehler, Ann K.
91223
1720.5
17.84
25,687.80
Hussey, Elizabeth L.
91224
1452
15.06
21,684.88
*342 Tip income
per division
Total tip
Tips
Total tips
Petitioner
(10% of Col.
income
reported
unreported
4)
Dining Room. Shift #2 (Total sales subject to tips: $730,148.30; Total
waitress hours: 35,361 1/2)
Allen, Evelyn M.
$3,351.38
$3,363.15 [6]
$ 500.00
$2,863.15
Bassett, Pauline V.
3,292.97
3,298.86 [6]
1,025.00
2,273.36
Bowman, Neoma N.
3,168.84
3,168.84
1,198.45
1,970.39
Costello, Eva Mae (Cage)
3,658.04
3,662.95 [5]
559.00
3,103.95
Charles, Clyta I.
3,884.39
3,894.20 [5]
1,200.00
2,694.20
Fowler, Roma
3,431.70
3,431.70
726.57
2,705.13
Giles, Helen E.
3,271.06
3,271.06
1,759.41
1,511.65
Hoye. Mar,aret
3,234.56
3,246.33 [5]
1,050.00
2,196.33
Cornett, Pauline
3,278.37
3,324.48 [5]
910.00
2,414.48
(O'Koren)
Orr, Helen S.
2,110.13
2,115.04 [5]
1,024.00
1,091.04
Parks, H. Loulse
3,804.07
3,960.04 [5]
597.50
3,362.54
Roberts, Yvonne
3,979.31
3,988.14 [5]
650.00
3,338.14
Snyder, Della
3,570.43
3,570.43
1,050.00
2,520.43
Sonheim, Dorothy F.
2,000.61
2,005.52 [5]
910.00
1,095.52
Banquet Room (Total sales subject to tips: $98,097.44; total waitress hours:
7,168)
Allen, Evelyn M.
11.77
Bassett, Pauline V.
5.89
Costello, Eva Mae (Cage)
4.91
Charles, Clyta I.
9.81
Hewett, Barbara Rose
2,148.33
2,148.33
930.00
1,218.33
Hoye, Margaret
11.77
Langen, Rose L.
1,773.60
1,773.60
800.00
973.60
Cornett, Pauline
46.11
(O'Koren)
Orr, Helen S.
4.91
Parks, H. Louise
155.97
Roberts, Yvonne
8.83
Sonheim, Dorothy F.
4.91
Coffee House (Total sales subject to tips: $467,811.34 [6]; Total waitress
hours: 39,382.5)
Ames, Eula M.
$2,326.19
$2,326.19
$ 950.00
$1,376.19
Anson, Margie A.
2,226.20
2,226.20
1,000.00
1,226.20
DeBusk, Bernice A.
421.03
421.03
375.83
45.20
Dohanich, Harriet J.
1,094.68
1,094.68
750.00
344.68
Morsch, Helen
2,157.78
2,157.78
200.00
1,957.78
Standish, Joann
2,557.76
2,557.76
542.00
2,015.76
Weis, Thelma M.
394.72
394.72
none
394.72
Cocktail Lounge (Total sales subject to tips: $143,989.92; Total waitress
hours: 9,642)
Buehler, Ann K.
2,568.78
2,568.78
1,500.00
1,068.78
Hussey, Elizabeth L.
2,168.49
2,168.49
1,300.00
868.49
*343 All of the petitioners who claimed deductions for the cost and care of white shoes and/or special workuwniforms have failed to prove that they are entitled to such deductions, with the sole exception of Margie A. Anson, the petitioner in Docket No. 91201, who is entitled to a deduction for special uniforms in the amount of $10.25 which was supported by documentary evidence. In his notice of deficiency respondent disallowed certain itemized deductions for contributions, interest, taxes and medical expense jointly to petitioner Ann K. Buehler, Docket No. 91223, and her husband. Petitioner Buehler has failed to establish that she and her husband are entitled to take the itemized deductions claimed. Respondent also disallowed deductions including contributions, interest, taxes and medical expense to Joann *344 Standish, Docket No. 91206. Petitioner Standish has failed to establish that she is entitled to any of the deductions claimed, with the sole exception of an interest item in the amount of $117.08. Opinion It is, of course, settled law that tips or gratuities constitute compensation for services rendered and, accordingly, are includable in gross income under section 61(a) of the Internal Revenue Code of 1954. Roberts v. Commissioner, 176 F. 2d 221 (C.A. 9, 1949), affirming 10 T.C. 581; Dorothy L. Sutherland, 32 T.C. 862 (1959); Mendelson v. Commissioner, 305 F. 2d 519 (C.A. 7, 1962), affirming a memorandum decision of this Court, certiorari denied 371 U.S. 877 (1962). What is at issue then, in each of these cases consolidated for opinion, is the amount received by petitioners as tips during the taxable year. Respondent determined that all of the individual petitioners either lacked records completely or kept records inadequate to clearly reflect tip income as required by law. Consequently, he utilized his statutory authority under section 446, Internal Revenue Code of *345 1954, and resorted to a computation of the amount of each petitioner's tips for the year 1958 in accordance with a method which in his opinion did clearly reflect tip income. From the records of the Tiffin Inn for the year 1958 respondent obtained the total sales in each division of the restaurant. These same records yielded a percentage of the total number of hours each petitioner worked in a particular division. By multiplying the two figures thus obtained respondent was able to determine the net sales of food and drink made by each of the individual petitioners during 1958. Further calculations showed that, taking into account a waitress' expenses such as payment by her of tips to busboys, it was not unreasonable to assume that each waitress received 10 percent of the sales made by her as net tips. The respondent's determination is entitled to a presumption of correctness. See Rule 32, Rules of Practice, Tax Court of the United States. Therefore, each petitioner has the burden of proving the incorrectness or inherent unreasonableness of such determination. Sutherland, supra. We find that all of the petitioners have failed to carry their burden of proof. Of the *346 twenty-five individual petitioners involved herein, seventeen failed to keep any record whatsoever of their income from tips which could be shown to the Court. Eight of the petitioners maintained some kind of record of tip income, but in each case that record was found by respondent to inadequately reflect income. The law requires each and every taxpayer to keep such records as will clearly and sufficiently reflect the amount of income of all types received in each year. Sections 6001 and 446, Internal Revenue Code of 1954; Sutherland, supra. Where, as here, taxpayers maintain either no records, or ones which are inadequate, both the Commissioner and, in turn, this Court, have no other course than to reconstruct income in the most reasonable way possible. Such reconstructions are rarely, if ever, exact, nor are they required to be. It is sufficient if the reconstruction is reasonable in light of all surrounding facts and circumstances. The dilemma of the taxpayer keepping either no records or ones which are inadequate is of his own making. After carefully considering the entire record, we are not persuaded that respondent has been either arbitrary *347 or unreasonable in making his determination of tip income for each of the petitioners for the year 1958. However, we believe that the figures adopted by respondent on brief for gross sales upon which tips of an average of 10 percent were left in each division is too high, and those figures have been reduced accordingly. In addition, we find that respondent's figure for gross "tippable" sales in the coffee house failed to take into account "carryout" business upon which the waitresses employed received no tips. This figure, too, has been reduced correspondingly. In Docket No. 91223 respondent disallowed to petitioner Ann K. Buehler and her husband certain deductions for contributions, interest, taxes and medical expense claimed on their 1958 joint return. The burden of proving error on respondent's part in disallowing these deductions was on petitioner Buehler and her husband. No evidence whatsoever was introduced on this issue. We therefore have no other course than to sustain respondent's original determination disallowing the deductions. The Buehlers will, of course, be allowed the standard deduction in lieu of the disallowed itemized deductions. Itemized deductions including *348 contributions, interest, taxes and medical deductions were likewise disallowed to petitioner Joann Standish, Docket No. 91206. While she testified in regard to certain of the claimed deductions, little substantive proof other than with respect to the interest deductions was introduced. We believe her self-serving testimony is insufficient to carry the burden of overcoming the presumptive correctness of respondent's determination, except as to the $117.08 item of interest paid to the First National Bank of Denver during 1958 which was supported by documentary evidence. The petitioner will be allowed the standard deduction in lieu of the disallowed itemized deductions. To take into account certain concessions made by respondent on brief and adjustments made necessary by our findings, Decisions will be entered under Rule 50 in all dockets herein. Footnotes
1. Proceedings of the following petitioners are consolidated herewith for opinion: Samuel P. and Bernice A. DeBusk, Docket No. 89301; Hester Louise Parks, Docket No. 91200; Joe R. and Margie A. Anson, Docket No. 91201; Pauline O'Koren Cornett, formerly Pauline O'Koren, Docket No. 91202; William R. and Helen E. Giles, Docket No. 91203; Duane and Helen Morsch, Docket No. 91204; John D. and Harriet Jeane Dohanich, Docket No. 91205; Joann Standish, Docket No. 91206; Richard A. and Della Snyder, Docket No. 91207; Lee W. and Roma Fowler, Docket No. 91208; Kenneth E. and Evelyn M. Allen, Docket No. 91209; Keith G. and Clyta I. Charles, Docket No. 91210; Cecil C. and Eula M. Ames, Docket No. 91211; Caswell L. and Yvonne Roberts, Docket No. 91212; Wilbert and Rose L. Langen, Docket No. 91213; Barbara R. Hewett, Docket No. 91214; Jack H. and Margaret Hoye, Docket No. 91215; Neoma N. Bowman, Docket No. 91217; Dorothy F. Sonheim, Docket No. 91218; Helen S. Orr, Docket No. 91219; Eva Mae Cage Costello, Docket No. 91220; Thelma M. Weis, Docket No. 91222; Leonard L. and Ann K. Buehler, Docket No. 91223; and Elizabeth L. Hussey, Docket No. 91224.↩
2. As used in this opinion, the term "petitioners" refers only to the female petitioners, and not to the husbands of any of them unless otherwise specifically stated.↩
4. For dining room, coffee house and banquet room includes sales of food and liquor only. For cocktail lounge, includes sales of liquor only. ↩
3. Includes only time waitress was actually working and subject to tips. ↩
6. This figure includes reduction for "carry out" sales upon which no tips were left.↩
5. This figure is the sum of dining room tips plus banquet room tips. ↩