SUSAN P. FELDMANN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feldmann v. Commissioner
Docket No. 8700-82.
United States Tax Court
T.C. Memo 1983-781; 1983 Tax Ct. Memo LEXIS 3; 47 T.C.M. (CCH) 776; T.C.M. (RIA) 83781; December 28, 1983. Susan P. Feldmann, pro se. Max K. Boyer, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies of $770 and $1,014 in petitioner's *4 Federal income tax for the taxable years 1978 and 1979, respectively, and additions to tax for negligence under section 6653(a) [1] for those same years in the amounts of $38.50 and $50.70. The issues for our consideration are whether petitioner received unreported tip income in the amounts determined by respondent during the years in issue and whether petitioner is liable for the addition to tax for negligence for those same years. FINDINGS OF FACT Some of the facts have been stipulated and those facts are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Susan P. Feldmann filed timely Federal income tax returns for the calendar years 1978 and 1979. She maintained her legal regal residence in Laurel, Florida at the time the petition in the instant case was filed with the Court. During 1978 and 1979, petitioner's place of employment and sole source of wage income was the Windjammer Restaurant and Lounge, Inc. (Windjammer) located in Sarasota, Florida. The Windjammer is composed *5 of two separate dining rooms, the least expensive of which is referred to as the Family Dining Room and the more expensive of which is called Davy's Locker Dining Room. Ms. Feldmann was employed as a waitress in Davy's Locker Dining Room during the years in issue and, except for vacations, generally worked Wednesday through Sunday. She had substantial experience as a waitress prior to 1978. Respondent conducted a statistical sampling to determine the tip income of waitresses employed by the Windjammer restaurant in 1978 and 1979. Based upon the charge and cash sales of Davy's Locker, the amount of tips stated on the charge sales receipts, and hours worked by the waiters/waitresses at the restaurant, a formula was prepared to determine the correct tip income of the waiters/waitresses. More specifically, Ms. Feldmann's tip income was computed as follows: Respondent examined charge slips for Davy's Locker upon which tips to waiters were stated for two weeks in each of the taxable years and determined the average tip percentage. Using the total sales for each year, the total hours worked by all the waitresses and the percentage of total sales that were charged, the dollar amount *6 of charge sales per hour was computed. Because Ms. Feldmann's tips on charge sales for the two weeks per year that were specifically analyzed were slightly higher than the tips of the other waitresses, her number of hours worked was adjusted accordingly. From these figures the amount of petitioner's total charge sales for each year was computed. That product was multiplied by the average charge tip to determine her total tips on charge sales. Her cash tips were computed using the same data with the exception that the average tip for charge sales figure was decreased by two percentage points to account for the fact that tips on cash sales are generally less than tips on charge sales. This total of tips on charge and cash purchases was then reduced by 10 percent to reflect the portion of the waitresses' tips which respondent assumed were given to the busboys. Using the above-described method, respondent determined the petitioner received total tip income of $8,549 in 1978 and $9,382 in 1979. [2]
*7 Petitioner reported tip income in the amount of $4,718 for 1978 and $4,260 for 1979. In the notice of deficiency dated March 16, 1982, respondent determined in accordance with his statistical analysis that petitioner underreported her tip income for those years in the amounts of $3,831 and $5,122, respectively. Respondent further determined that a part of petitioner's underpayment of tax for those years was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). OPINION The primary issue for our decision is whether petitioner received unreported tip income during 1978 and 1979 in the amounts determined by respondent. Clearly, tips are includable in gross income as they constitute compensation for services rendered. [3] Section 61(a); section 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner,709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Roberts v. Commissioner,176 F.2d 221 (9th Cir. 1949), affg. 10 T.C. 581 (1948); Schroeder v. Commissioner,40 T.C. 30, 33 (1963). *8 Taxpayers are required to keep records sufficient to enable respondent to determine their correct tax liability. Section 6001. When taxpayers receive income from tips, the required records consist of accurate, contemporaneously maintained diaries of such income. Section 1.6001-1(a), Income Tax Regs. Petitioner's records of her tip income consist of a loose leaf notebook listing figures which purport to be the total tips earned each week. Our examination of these records, however, does not convince us that these figures represent either the accurate or contemporaneous listing of tips required by respondent's regulations. As such, we attach no weight to such records. If a taxpayer does not keep records which clearly reflect income, respondent is authorized by section 446 to compute income by a method which, in his opinion, does clearly reflect income. Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965); Sutherland v. Commissioner,32 T.C. 862 (1959). Because we do not believe petitioner's purported tip diary accurately reflects the tips received by petitioner we must examine respondent's computation. Respondent computed petitioner's tip income *9 by using a tip computation formula based upon sales and payroll records kept by her employer. Comparable indirect methods to calculate tip income have been approved by the courts. Meneguzzo v. Commissioner,supra.The burden of proof is on petitioner to demonstrate any inaccuracies in the method selected by respondent in reconstructing her income. Welch v. Helvering,290 U.S. 111 (1933). While we consider respondent's statistical analysis to be reasonable, we believe the record shows that two adjustments are required. First, petitioner presented persuasive evidence that tips received on cash sales of food and beverages were less than estimated by respondent. Respondent calculated that the average tip on charge sales during 1978 and 1979 was 15.1 percent and 16.7 percent, respectively. Because objective data was not available for cash sales, respondent reduced the tip percentages for those sales to 13.1 percent for 1978 and 14.7 percent for 1979 (i.e., two percentage points). [4] We believe respondent failed adequately to take into account: (1) that the restaurant offered special dinners that attracted bargain seekers who were more likely *10 to pay in cash and leave smaller tips than other customers; and (2) that sometimes waitresses would be left no tip or only a negligible tip by some cash patrons. We are satisfied from the evidence presented by petitioner that some adjustment to respondent's formula is necessary. Based upon available information and weighing doubts against petitioner because of the placement of the burden of proof, we conclude that cash tips were only 70 percent of charge tips for both years in issue. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Second, we believe the testimony of petitioner and her witness that waitresses employed in Davy's Locker during 1978 and 1979 gave the busboys 15 percent of their tips rather than 10 percent as determined by respondent. With the exception of these two modifications, respondent's determination of petitioner's tip income is sustained. [5]
We must also decide whether Ms. Feldmann is liable for the additions to *11 tax for negligence under section 6653(a). Petitioner was negligent in failing to keep accurate records of her tip income as required by section 6001 and presented no evidence to justify her conduct. Accordingly, respondent's determination is sustained. Meneguzzo v. Commissioner,supra at 836; Schroeder v. Commissioner,supra at 34. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Respondent's actual computation is as follows: ↩
AUDIT - 1978
AUDIT - 1979
Charge Sales: Total Sales
$872,342.00 $993,667.00 % Charge
X 22.03%
23.97%
Charge Sales
192,177    238,182    Hours Worked
/ 21,178    / 23,134    Charge Sales/Hour
9.07     10.30     Hours Worked
1,481    1,467    Av. Adj.
X 115%   X 109%   Adjusted Hours
1,703.15 1,599.03 Charge Sales
X 9.07 X 10.30 TP's Charge Sales
15,447.57 16,470.00 Av Charge Tip Per Receipts
X 15.1%
16.7%
Tips on Charge Sales
2,333    2,750    Cash Sales: Total Sales
872,342.00 993,667.00 % Cash Sales
X 77.97%
X 76.03%
Cash Sales
680,165    755,485    Hours Worked
/ 21,178    / 23,134    Cash Sales/hr
32.12    32.65    Hours Worked
1,481    1,467    Av. Adj.
X 115%   X 109%   Adjusted Hours
1,703.15 1,599.03 Cash Sales/Hr
X 32.12 X 32.65 TP's Cash Sales
54,705.00 52,208.00 Av. Tip (Charge - 2%)
X 13.1% X 14.7% Cash Tips
7,166    7,675    Total Tips
Charge
2,333    2,750    Cash
7,166    7,675    Total
9,499    10,425    Less 10% Busboys
950    1,043    Correct Tips
8,549    9,382    Reported
4,718    4,260    Not Reported
$3,831    $5,122    3. Although Ms. Feldmann remarked in her testimony that sometimes friends and acquaintances gave her "gifts" in the form of larger tips, we do not understand petitioner to be taking the position that any of the amounts she received were nontaxable gifts under section 102. See Commissioner v. Duberstein363 U.S. 278↩ (1960).
4. This computes to tips on cash sales for 1978 and 1979 being 86.75 percent and 88.02 percent of those for charge sales, respectively.↩
5. These adjustments will be taken into account in the Rule 155 computation.↩