T.C. Summary Opinion 2004-117


UNITED STATES TAX COURT


COREY L. WHEIR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4350-03S.              Filed August 30, 2004.


Corey L. Wheir, pro se.

Frederic J. Frenandez, for respondent.


COUVILLION, Special Trial Judge:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $2,168, $1,958, and $1,470, respectively, in petitioner's Federal income taxes for 1999, 2000, and 2001.

The issues for decision are: (1) Whether, for the 3 years in question, petitioner is entitled under section 162(a) and (a)(2) to deductions for unreimbursed travel and transportation expenses in connection with his employment and (2) whether, for the 3 years, petitioner is entitled under section 162(a) to deductions for certain expenses incurred in a body building trade or business activity.[2]

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was Wisconsin Rapids, Wisconsin.

Petitioner is a boilermaker and has been engaged in this activity since 1993. During the years in issue, he worked exclusively within the State of Wisconsin at various plants and paper mills throughout the State. He was a member of the boilermakers' union, and all of his job assignments came from the union. The union was affiliated with the AFL-CIO. Petitioner's

---

[2] One additional adjustment in the notice of deficiency is unreported interest income of $39 for the year 2000. The parties did not address this adjustment at trial; consequently, the Court considers this item conceded by petitioner. With respect to the two contested issues, the Court decides this case without regard to the burden of proof under sec. 7491(a).

work assignments were exclusively in the repair, maintenance, construction, or rehabilitation of paper mills and power plants, which included nuclear, gas turbine, and coal-fired plants, engaged in either the generation of electricity or the production of pulp or paper products. Petitioner's work assignments were temporary, lasting a few hours, a few days, several weeks, or for months. The latter categories usually involved new construction or the major overhaul of an existing facility. Petitioner was never an employee of the regular workforce at any facility.

Pursuant to a collective bargaining agreement between the union and the owners and operators of the various mills and power plants in Wisconsin, all work involving boilermakers at mills and plants was directed and coordinated by the union from its offices at Waukesha, Wisconsin. Whenever a call or request came from a mill or plant for one or more boilermakers, the union assigned boilermakers to the requesting plants under what was described as a "ladder" system, wherein the union maintained a list of its boilermaker members. Whenever a call or request came for one or more boilermakers, the first name or names on the list were assigned to the job. When a job was completed, the union steward at the mill called the union office at Waukesha, Wisconsin, and the "laid off" workers' names were placed at the bottom of the ladder. The union had a "no turn down" policy, which required each designated boilermaker to accept an assignment. Members of

the union were never required to report to the union hall. They were called by the union at their respective homes when they were given job assignments. The boilermakers, in essence, were always on standby at their respective homes when they were not on assignment.

Petitioner's home, at Wisconsin Rapids, Wisconsin, is practically in the geographic center of the State of Wisconsin. The union offices, at Waukesha, Wisconsin, are in southeast Wisconsin, approximately 30 minutes west of Milwaukee.

For each of his job assignments, petitioner traveled from his home at Wisconsin Rapids to the job site on a daily basis, except that at more distant places (the farthest being 115 miles) when, occasionally, he was required to work 10-hour shifts, petitioner stayed overnight at a local motel. Some of petitioner's assignments were in his home area of Wisconsin Rapids, or its environs, and petitioner always drove home each day from these locations, even if he worked a 10-hour shift.

For the 3 years at issue, petitioner worked at 19 different locations throughout the State of Wisconsin. The farthest location from Wisconsin Rapids was Kakuna, Wisconsin, approximately 115 miles from Wisconsin Rapids. Other locations, as noted, were elsewhere in the State, including some within the environs of Wisconsin Rapids.

Petitioner received no reimbursements for his expenses in driving to and from the job sites or for the room and meal expenses he incurred in connection with his assignments. On his Federal income tax returns for 1999, 2000, and 2001, petitioner claimed itemized deductions for these expenses on Schedules A, Itemized Deductions, as unreimbursed employee expenses. These expenses included mileage for the use of his automobile and the living expenses incurred at the more distant locations, from which it was neither practical nor feasible to drive home each day. Petitioner did not claim any deductions for expenses incurred on any job assignments that were within a 35-mile radius of his home at Wisconsin Rapids. The net amounts deducted on petitioner's Federal income tax returns as miscellaneous unreimbursed employee business expenses, after the section 67(a) adjustment, were $9,845, $8,652, and $5,035, respectively, for 1999, 2000, and 2001. In the notice of deficiency, respondent disallowed all the claimed deductions on the ground that the expenses were commuting expenses and, therefore, were personal and not deductible under section 262. Respondent has not questioned or challenged the substantiation of the amounts petitioner claimed.

In addition to his work as a boilermaker, petitioner was also a professional bodybuilder. In this activity, petitioner lifted weights, posed to display his muscular finesse, trained

other bodybuilders, and gave seminars. Some of his poses were published in bodybuilding publications. Petitioner won awards and received at least one endorsement from a supplement manufacturer for which he received supplements valued at $100 per month. Petitioner's income from this activity, therefore, came from posing, seminars, publication of his poses, training bodybuilders, and the supplements from the supplement manufacturer.

Petitioner reported the income and expenses of his bodybuilding activity as a trade or business on Schedules C, Profit or Loss From Business, of his Federal income tax returns. For the years at issue, petitioner reported the following income, expenses, and net losses:

|  | 1999 | 2000 | 2001 |
| --- | --- | --- | --- |
| Gross income | $ 2,405 | $ 8,840 | $ 3,975 |
| Total expenses | 11,771 | 14,708 | 14,539 |
| Net loss | (9,366) | (5,868) | (10,564) |

In the notice of deficiency, respondent disallowed deductions of expenses for supplements in the amounts of $4,630, $4,352, and $4,744, respectively, for the years in question. Respondent determined that these amounts represented payments for products that were personal and, therefore, were not deductible under section 262. No other deductions were disallowed.

Included in the disallowed deductions labeled as "Supplements" were the costs of bison (buffalo) meat, which petitioner consumed daily, year round, at the rate of 3 pounds per day. Petitioner contends he consumed the meat for muscle development because the protein levels in buffalo are much higher than those in beef or other meat products.[3] In addition, petitioner also consumed enormous quantities of vitamins and minerals through various types of "shakes" containing ingredients to enhance strength and muscle development. Petitioner also used a variety of other products that were not ingested but were simply sprayed on or massaged into the skin to enhance his appearance. One of these products was called ProTan Muscle Juice Professional Posing Oil and, according to instructions, was applied "prior to pumping up backstage for optimum effects." Another similar product called Blow Out was applied to the body 5 minutes before a workout. Still another product was massaged over the body several hours before a posing to provide a suntan brown color or a deep tan to the body. Most of these products could not be purchased in local health food stores but were purchased solely through advertisements in bodybuilding publications. Respondent, in the notice of deficiency,

---

[3] Petitioner testified that, while he could have consumed beef, which is less expensive than bison, he would have had to consume 6 pounds of beef per day to equal the effects of the bison.

disallowed the deductions claimed for the described items on the ground that, under section 262, these expenses were personal because the products described could be consumed by bodybuilders and nonbodybuilders as well.

With respect to the first issue relating to petitioner's employment as a boilermaker, section 262 disallows any deduction for personal, living, or family expenses. Transportation expenses ordinarily incurred between one's residence and one's principal place of business (a job site) are typically referred to as "commuting expenses" and are nondeductible personal expenses under section 262. Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946). However, transportation expenses in going between one's business location and another business location are generally deductible under section 162(a). Additionally, when an employee, because of the nature of the work, is required to stay at a business location, and the stay requires sleep or rest, the expenses for transportation, meals, and lodging are deductible under section 162(a)(2) as travel expenses.

A taxpayer whose principal place of business is at a distance from his residence cannot deduct the cost of the travel to and from the business or the costs of meals and lodging at the place of business. Such expenses are regarded as personal commuting expenses and are not deductible under section 262.

Fausner v. Commissioner, supra; Commissioner v. Flowers, supra. Under an exception to this rule, a taxpayer may deduct travel expenses associated with employment that is temporary (as opposed to indefinite) in duration when the taxpayer is away from home. Peurifoy v. Commissioner, 358 U.S. 59 (1958). Employment is temporary if it is expected to terminate within a relatively short period and such termination is foreseeable. Stricker v. Commissioner, 54 T.C. 355 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). In petitioner's situation, there is no dispute that all of his work assignments were temporary.

The first issue in this case is whether, under section 162(a), petitioner is entitled to deductions for his transportation expenses when he drove daily to and from his temporary assignments, and whether, under section 162(a)(2), petitioner is entitled to deduct travel expenses when he stayed overnight at more distant locations from his home.

Initially, this Court held in Turner v. Commissioner, 56 T.C. 27, 33 (1971), vacated and remanded per order (2d Cir. Mar. 21, 1972), that "Commuting is commuting, regardless of the nature of the work engaged in, the distance traveled or the mode of transportation used" and disallowed the deduction by an employee of expenses for transportation from his residence to a distant temporary job. The Commissioner, however, in Rev. Rul. 190, 1953-2 C.B. 303, allowed deduction of transportation expenses of

an employee where the expenses are to a temporary, as distinguished from an indefinite or permanent, job where the job is beyond the general metropolitan area of the taxpayer's tax home.  Since Turner, this Court has decided cases where the issue has been framed in terms of the test of Rev. Rul. 190, supra. McCallister v. Commissioner, 70 T.C. 505 (1978); Norwood v. Commissioner, 66 T.C. 467 (1976).  Rev. Rul. 190, supra, has been modified or clarified by the IRS over the years.  For our purposes here, Rev. Rul 99-7, 1999-1 C.B. 361, applies, and this case has been presented for decision under its provisions.  The parties do not dispute the applicability of Rev. Rul. 99-7, supra.  Rev. Rul. 99-7, supra, in pertinent part, provides:

> In general, daily transportation expenses incurred in going between a taxpayer's residence and a work location are nondeductible commuting expenses.  However, such expenses are deductible under the circumstances described in paragraph (1) * * * below.
>
> (1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works. * * *

Respondent's position, as set out in a trial memorandum, is as follows:

> According to Rev. Rul. 99-7, "a taxpayer may deduct daily transportation incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works."  In our case, the petitioner does not live in a

Metropolitan area as defined by the United States Census Bureau. Therefore, the primary issue of concern is where the petitioner normally works. The government's primary position is that the whole State of Wisconsin would be deemed to be the petitioner's normal work area (commuting area) and any job site outside Wisconsin would be deemed non-commuting.

The Court disagrees with that construction or interpretation of Rev. Rul. 99-7, supra. Nowhere in Rev. Rul. 99-7, supra, is there a definition of "metropolitan area", nor is there any statement in the revenue ruling that the meaning of "metropolitan area" is an area designated as such by the U.S. Bureau of the Census. Moreover, respondent has cited no legal authority adopting such a construction of "metropolitan area". Additionally, in the Court's view, such a meaning as respondent urges could lead to unfair and illogical results. For example, a boilermaker who happens to live in a Bureau of the Census-designated metropolitan area would be allowed a deduction for transportation expenses to any job site outside that metropolitan area; yet, a taxpayer such as petitioner who does not live in an area so designated would not be entitled to deduct the same expenses. Such a position does not establish a level playing field for taxpayers.[4]

---

[4] It is evident that Rev. Rul. 99-7, 1999-1 C.B. 361, applies to daily transportation expenses under sec. 162(a) and does not address travel expenses incurred away from home when sleep or rest is involved under sec. 162(a)(2). Moreover,
(continued...)

The Court is of the view and holds that an ordinary common sense meaning of "metropolitan area" as that term is used in Rev. Rul. 99-7, supra, applies in this case. In Webster's Third New International Dictionary (1986) the word "metropolitan" is defined as "relating to, or constituting a region including a city and the densely populated surrounding areas that are socially and economically integrated with it". In this case, petitioner, on his tax returns, considered a 35-mile radius from Wisconsin Rapids as his metropolitan area. No evidence was presented to convince the Court that the area should be expanded or diminished.

Respondent presented two alternatives that would constitute a substitute for the term "metropolitan area" in Rev. Rul. 99-7, supra. One of the alternative positions is that petitioner's normal work area consisted of any area within 80 miles from

---

⁴(...continued)
neither Rev. Rul. 99-7, supra, nor any of the intervening revenue rulings on this subject (Rev. Rul. 94-47, 1994-2 C.B. 18; Rev. Rul. 90-23, 1990-1 C.B. 28) appears to have changed the concept of "metropolitan area" in Rev. Rul. 190, 1953-2 C.B. 303. There, the employees in question ordinarily worked at construction jobs within the metropolitan area of a certain city and worked for only 2 to 4 months at a "site located 18 miles from the limits of that city and some distance beyond the suburbs generally regarded as constituting part of such metropolitan area." Rev. Rul. 190, 1953-2 C.B. at 304. The Court questions why respondent in this case is characterizing "metropolitan area" as the entire State instead of characterizing "metropolitan area" in the same context that "metropolitan area" is characterized in Rev. Rul. 190, supra.

petitioner's home at Wisconsin Rapids.  Respondent cited no

authority to support this argument.  Respondent's second

alternative is that petitioner's normal work area should be based

on an "economic area" defined by the Bureau of Economic Analysis

of the U.S. Department of Commerce.  The breadth of this area as

it affected petitioner was considerably larger than the 35-mile

radius from Wisconsin Rapids that petitioner used as the outer

limits of his work area.  Rev. Rul. 99-7, supra, provides no

alternatives to the term "metropolitan area" as that term is used

in the ruling.  The Court cannot ignore Rev. Rul. 99-7, supra, by

adopting alternatives that, in effect, negate the ruling.

Respondent presented no evidence to show that the 35-mile radius

petitioner used was unreasonable.  The Court, therefore, rejects

the alternatives suggested by respondent, accepts petitioner's

35-mile radius as the limit of the metropolitan area in which

petitioner lived, and holds that petitioner is entitled to

deductions for the claimed travel and transportation expenses.

Petitioner, therefore, is sustained on this issue.[5]

With respect to the second issue, involving expenses

incurred in petitioner's bodybuilding activity, respondent

---

[5] As noted earlier, as to those job sites where petitioner stayed overnight because of distance and his extended work shifts, which resulted in his incurring expenses for sleep or rest, the deductibility of those expenses is governed by sec. 162(a)(2).  Respondent presented no argument addressing sec. 162(a)(2).

disallowed expenses petitioner claimed for supplements, which included buffalo meat consumed daily, shake drinks of vitamins for energy and body enhancing effects, and various skin or body applications to enhance petitioner's physical appearance as a competitive bodybuilder.

Under section 262, a taxpayer is not allowed deductions for personal, living, or family expenses. Petitioner was engaged in a trade or business activity, and the expenses he incurred that were ordinary and necessary to that activity are deductible under section 162. The peculiarity of petitioner's business activity is that it included expenses for things that are generally considered personal. As the Court noted in Hynes v. Commissioner, 74 T.C. 1266, 1289 (1980), resolution of such issues requires a reconciliation of sections 262 and 162. In Commissioner v. Heininger, 320 U.S. 467 (1943), the Court held that whether expenses are ordinary and necessary business expenses and, therefore, deductible is a question of fact, and the taxpayer has the burden of demonstrating that the purpose of an expenditure is primarily business rather than personal, and that the business in which the taxpayer is engaged benefited or was intended to be benefited by the expenditure. In numerous cases, the courts have decided that, where a business wardrobe was a necessary condition for employment, costs for the wardrobe are generally not deductible under section 262 under the general

rule that, where business clothing is suitable for general wear, the expense is more inherently personal than business related. Donnelly v. Commissioner, 262 F.2d 411 (2d Cir. 1959), affg. 28 T.C. 1278 (1957); Roth v. Commissioner, 17 T.C. 1450 (1952); Roberts v. Commissioner, 10 T.C. 581 (1948), affd. 176 F.2d 221 (9th Cir. 1949); Drill v. Commissioner, 8 T.C. 902 (1947). Such costs are not deductible even when it is shown that the expense would not have been incurred but for the employment. Stiner v. United States, 524 F.2d 640 (10th Cir. 1975). However, exceptions have been allowed where an item is useful only in the business environment in question. Hynes v. Commissioner, supra at 1290. This case, which does not involve clothing, can nevertheless be analogized with these general rules.

With respect to petitioner's consumption of buffalo meat, respondent has not challenged petitioner's argument that the meat developed proteins and strength that enhanced his bodily physique. However, there is no doubt that buffalo meat is also consumed as food by nonbodybuilders, albeit not with the regularity and in the quantities consumed by petitioner. On balance, the Court holds that petitioner's expenses for buffalo meat are inherently personal and are not deductible under section 262. Respondent, therefore, is sustained on that portion of the expenses at issue. The shake drinks consumed by petitioner also, in the Court's view, fall in this same category, and respondent

is also sustained as to those disallowed expenses.  Such items may well be consumed not only by bodybuilders but also by others interested in their health and physical appearance.

As noted above, petitioner also used a variety of other products that were not ingested but were physically applied to the body primarily to enhance his appearance as a professional bodybuilder.  Even though no evidence was presented to establish that those products were used by nonprofessional bodybuilders, the Court recognizes that such products could be and might in fact be used by nonprofessionals interested in their physical appearance.  The evidence presented indicates that these products were marketed only through bodybuilding publications and were not generally for sale through normal marketing outlets.  The fact that nonprofessionals may have used such products does not, in the Court's view, tip the scale against professional bodybuilders, bearing in mind the general rule cited above that the Court's role on questions of this nature is to reconcile sections 262 and 162.  As to these products, while there may be some doubt, the Court concludes, on balance, that the scale tips ever so slightly in favor of petitioner.  Petitioner, therefore, is allowed a deduction for this portion of the expenses.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.