RICHARD BARTELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bartell v. Commissioner
Docket No. 7611-81.
United States Tax Court
T.C. Memo 1984-346; 1984 Tax Ct. Memo LEXIS 326; 48 T.C.M. (CCH) 461; T.C.M. (RIA) 84346; July 10, 1984. Richard Bartell, pro se. Frances Honecker, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, *327 Judge: This case was assigned to Special Trial Judge Fred R. Tansill for trial, briefing and opinion pursuant to General Order No. 6, dated March 8, 1978, section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: Respondent determined a deficiency of $2,098 in petitioner's 1978 Federal income tax, and an addition to tax of $105 pursuant to section 6653(a). The issues presented for our determination are (1) whether petitioner received unreported tip income of $4,200 during the taxable year, and (2) whether petitioner is liable for an addition *328 to tax for negligence or intentional disregard of rules and regulations. Some of the facts have been stipulated and are so found. Petitioner resided in New York, New York, at the time he filed his petition in this case. During 1978 petitioner was employed as a hair stylist for the Seligman and Latz Beauty Salon (the Salon) in the Lord and Taylor Store on Fifth Avenue in New York City. Petitioner timely filed a Federal income tax return for 1978, reporting wages of $16,937 from the Salon and tip income of $735. Lord and Taylor is a well-known department store located in the fashionable shopping district on Fifth Avenue in midtown Manhattan. The Salon, which was located on the mezzanine of the store, employed approximately 25 to 30 operators. The petitioner, as a hair stylist, served both male and female customers, cutting hair, giving permanents, and coloring and straightening hair. In 1978 he worked 49 weeks, with an average work week of 37 1/2 hours. The petitioner worked primarily on a commission basis, receiving 45 percent of his gross sales to customers. During 1978, petitioner served 1,524 customers and had total gross sales of $32,903; his average "ticket" (i.e. *329 , charge per customer) was $21.59. Approximately 85 percent of the petitioner's customers were customers who requested him; the remainder were "walk-in" or "transient" customers who were assigned to him by the Salon. The Salon did not permit customers to charge tips to their cerdit cards. All tips paid to the petitioner therefore were paid in cash; tips generally were handed to him personally by the customer after the services were performed, but occasionally were left in an envolope at the front desk. Petitioner was required to report periodically to the Salon manager the amount of tips he received, but was not required to document the amount of tips so reported. Petitioner reported the following amounts of tips to his employer [3]: January 26, 1978
$70.00
March 2, 1978
65.00
March 23, 1978
65.00
April 13, 1978
65.00
May 25, 1978
65.00
June 22, 1978
65.00
August 3, 1978
80.00
September 14, 1978
65.00
October 12, 1978
65.00
November 16, 1978
65.00
December 14, 1978
65.00
Except for January 26 and August 3, the amount of tips reported by the petitioner did not vary, although his gross sales for the relevant periods ranged from $1,975.80 to *330 $4,448.50. For example, for the period from March 9, 1978 to March 23, 1978 the petitioner had gross sales of $2,259, served 93 customers, and reported $65 in tips; during the period from August 10, 1978 to September 14, 1978 he had gross sales of $4,448, served 199 customers, and again reported $65 in tips. Petitioner did not keep any records of his tip income during 1978. The Commissioner conducted a nationwide investigation of unreported tip income received by service industry employees during 1978. He determined the tip income received by multiplying the amount of gross sales by 15 percent. The 15 percent figure reflected the Commissioner's determination that 15 percent was the normal and customary amount that service industry employees received as tips in 1978. The Commissioner determined that 15 percent of petitioner's gross sales of $32,903, or $4,935, was the total amount of petitioner's tip income for 1978; thus adding $4,200 to petitioner's reported tip income of $735.00. Tips constitute compensation for services rendered and are includable in gross income *331 under section 61(a). Schroeder v. Commissioner,40 T.C. 30, 33 (1963). Section 6001 and the regulations thereunder require all taxpayers to keep records which are sufficient to establish the taxpayer's gross income, deductions, and credits. Where a taxpayer fails to keep adequate records as required by the statute and regulations, section 446(b) authorizes the Commissioner to reconstruct his income under a method which, in the Commissioner's opinion, clearly reflects income. Crachiola v. Commissioner,643 F.2d 1383, 1385 (9th Cir. 1981), aff'g a Memorandum Opinion of this Court; Meneguzzo v. Commissioner,43 T.C. 824, 833 (1965). As the petitioner did not keep records of his tip income, the Commissioner was entitled to reconstruct his income under section 446(b). The Commissioner's determination of petitioner's tip income is presumptively correct and will be affirmed as long as it is rationally based. Cracchiola v. Commissioner, supra. Petitioner has the burden of proving that the method used by the Commissioner to determine his tip income was arbitrary. Welch v. Helvering,290 U.S. 111, 115 (1933). Petitioner's *332 position is that he reported all of the tips he received. The only evidence presented by the petitioner in support of his position was his own unsubstantiated, uncorroborated, self-serving statements. At trial, he claimed that his tips were low because the majority of his customers were not regular customers but were friends, transient out-of-towners, and "young girls just out of college," all of whom tended not to tip at all. We cannot give credence to his testimony in light of the undisputed fact that 85 percent of the petitioner's customers were customers who requested him. We think the most reasonable inference to be drawn from this fact is that the majority of petitioner's customers were regular customers. Moreover, the petitioner could not explain why (with two exceptions) the amount of tips reported was always $65, despite wide variations in the number of customers served and in the amount of gross sales during the time periods involved. For example, as mentioned above, during the period from March 9, 1978 to March 23, 1978 the petitioner had gross sales of $2,259, served 93 customers, and reported $65 in tips; during the period from August 10, 1978 to September 14, 1978, although *333 the petitioner nearly doubled his gross sales to $4,448, and more than doubled the number of customers served to 199, the again reported $65 in tips. The petitioner testified that he maintained a daily record of tips he received, but threw away his daily records after he reported the amount of tips he received to the Salon manager. We find it incredible that a daily tip record would produce precisely the same amount of tips for each month of the year (with two exceptions). We do not believe that the amounts petitioner reported to the Salon manager were based on any daily record of tips; we believe instead that petitioner reported to the Salon manager as tips an arbitrary amount bearing no relation to the amount of tips in fact received by him. Finally, we note that the amount of tips reported by the petitioner averaged 48 cents per customer on an average ticket of $21.59. We find it impossible to believe that customers who regularly patronized the petitioner tipped in the low amount claimed by thim. The tip percentage used by the Commissioner accords with our understanding as to tipping practices in the largest cities and generally appears to us to have been reasonable. However, *334 the Commissioner applied that percentage to petitioner's total gross sales without differentiating between regular and transient customers. It is undisputed that 15 percent of petitioner's customers were walk-in or transient customers who were assigned to him by the Salon. We agree with petitioner's assertion that transient customers pay significantly smaller tips than do regular customers, and sometimes do not tip at all. Taking this factor into account, we hold that petitioner's total tip income for 1978 was $4,200 rather than the $4,935 determined by the Commissioner. His unreported tip income was thus $3,465. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928). In so holding, we observe that . . . where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the one here involved, by failure to keep records of their income assume the hazard that they may be called upon to pay a tax based *335 on an income which cannot be determined to a certainty. Such a situation, however, arises from the fault of the taxpayer and not that of the Commissioner. Mendelson v. Commissioner,305 F.2d 519, 523 (7th Cir.), cert. denied 371 U.S. 877 (1962), aff'g a Memorandum Opinion of this Court.See also Roberts v. Commissioner,176 F.2d 221, 226 (9th Cir. 1949), affg. 10 T.C. 581 (1948). We must also decide whether the Commissioner correctly imposed an addition to tax under section 6653(a). Petitioner failed to keep records of his tip income during 1978. Such conduct constitutes negligence or intentional disregard of the rules and regulations requiring record keeping. Section 1.6001-1, Income Tax Regs. Accordingly, the Commissioner's determination of an addition to tax is sustained. See Meneguzzo v. Commissioner,supra;Schroeder v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, in effect during the taxable year, unless otherwise provided. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to General Order No. 6, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that Rule are not applicable to this case.↩
3. The dates given are the dates of the pay stubs on which the tips reported by petitioner were included.↩