BARBARA McLEOD, ET AL., [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent McLeod v. Commissioner
Docket Nos. 30944-81, 30945-81, 30946-81, 30947-81, 30948-81, 30950-81, 30951-81, 30952-81, 30953-81, 30954-81, 30956-81, 30957-81, 2892-82.
United States Tax Court
T.C. Memo 1984-658; 1984 Tax Ct. Memo LEXIS 11; 49 T.C.M. (CCH) 344; T.C.M. (RIA) 84658; December 20, 1984. Jerome L. Blut, for the petitioners. Gail K. Gibson, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated *12 cases, respondent determined the following deficiencies and additions to Federal income tax for the year 1978: Addition to Tax
Petitioners
Docket No.
Deficiency
Section 6653(a)
Barbara McLeod
30944-81
$3,554.03
$177.70
Leah Lock Canfield
30945-81
3,473.00
173.65
& Jesse M. Canfield
Donna Krenn and
30946-81
3,636.00
181.80
Robert E. Krenn
Christiana Lazarewicz
30947-81
3,297.00
164.85
& Adam A. Lazarewicz
Margaret L. Fagan
30948-81
2,653.00
132.65
Vera Cullen
30950-81
2,592.37
129.61
Ruben V. Aquino and
30951-81
5,038.00
251.90
Carmelita G. Aquino
Mary Ray and
30952-81
3,851.20
192.56
Ulysses Ray
Fred Bieler and
30953-81
4,501.00
225.05
Isayana Bieler
Mary E. Conde and
30954-81
4,733.49
236.67
Jose A. Conde
Jose Torres and
30956-81
4,528.00
226.40
Yolanda Torres
Hans J. Scholz
30957-81
4,438.45
263.12
Benito Biancaniello
2892-82
4,519.00
225.95
and Marianne
Biancaniello The issues are (1) whether petitioners understated their tip income as determined by respondent, and (2) whether petitioners are liable for additions to tax under section 6653(a) [2] for negligence or the intentional *13 disregard of applicable rules or regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation and exhibits attached thereto are incorporated herein by reference. At the time their petitions were filed, all of the petitioners resided in the State of Nevada. During 1978, each single petitioner and one petitioner in each petitioner-couple was employed as a waiter or waitress in the showroom of the Las Vegas Hilton. Hereinafter the word "petitioners" shall refer only to the waiters and waitresses so employed. Every evening two shows were presented in the showroom. The shows featured popular entertainers such as Liberace, John Davidson, Ann-Margaret, and Bill Cosby. The first was a dinner show at which the minimum charge for a couple was $45.00 plus a 3.5 percent sales tax and a 10 percent cabaret tax. The dinner show was followed by the cocktail show. The minimum charge for *14 this show was $35.00 plus the sales and cabaret taxes. The total sales for the showroom in 1978, including sales and cabaret taxes, was $15,869,560. Of this amount, $1,525,636 represents coupon and group sales which included a mandatory tip for waiters and waitresses of 15 percent. These tip amounts were included by Hilton on the W-2 forms of the waiters and waitresses involved and are not in dispute in this case. The dispute exists with respect to the tips on the other $14,343,924 in sales made in the showroom during 1978. The tabulation set out below reflects for the year 1978 the number of hours worked by each of the petitioners; the amount of tip income each reported to the Hilton; the amount of such income reported by each of them on their income tax return; and the amount of tip income shown in their own personal records: Tips Reflected
Hours
Tips Reported
Tips Reported
By Personal
Petitioner
Worked
to Hilton
on Return
Records
McLeod
1,660
0
$1,730.00
*
Canfield
1,314
$2,035.00
0
$3,737.00
Krenn
1,560
3,863.19
340.00
*
Lazarewicz
1,466
1,962.95
0
*
Fagan
1,628
0
5,500.00
*
Cullen
1,592
1,040.00
3,624.00
*
Aquino
1,838
0
0
5,438.00
Ray
1,218
2,281.72
0
*
Bieler
1,746
3,432.00
0
*
Conde
1,592
2,050.00
0
*
Torres
1,910
4,490.80
0
4,580.65
Scholz
1,616
0
0
*
Biancaniello
1,748
2,478.12
678.00
3,265.15
*15 Respondent audited the records maintained by the Hilton of the sales made in its showroom. Hilton's records reflected the amount of the tips charged by the customers to credit cards. Hilton's records did not reflect the amount of tips paid by customers on cash sales. The records also fail to reflect cash tips paid by customers on charge sales. From Hilton's records, respondent prepared a statistically random sample of the charge sales made in the showroom for 28 days in 1978. In the preparation of the sample, respondent ignored any tip of 50 percent or more on a charge sale but included all tips of 49 percent or less. From the random sample, respondent concluded that the average tip paid by customers on the charge sales containing a tip was 12.5 percent of the sale. However, respondent also determined that 25 percent of the charge sales did not reflect any tip. Therefore, in his computation, respondent assumed that the showroom had a stiff rate [3] of 25 percent on charge sales even though it was quite possible that some of the charge customers who did not charge a tip to their credit cards *16 did leave tips in cash. Nevertheless in computing the total tips paid to all waiters and waitresses in the showroom during 1978 respondent assumed that on 25 percent of all sales, both cash and charge, no tip was paid. To complete his computation of the tip income of petitioners, respondent first reduced the total cash and charge sales of $14,343,924 of the showroom for 1978, including sales and cabaret taxes, by the assumed stiff rate of 25 percent. He then applied the tip rate of 12.5 percent reflected on the charge sales, which included tips, and concluded that gross tips on all sales was $1,344,743 which he adjusted downward for the 17.4 percent the parties agree represents the amount paid by waiters and waitresses to busboys and bartenders. In this manner, he arrived at an adjusted total of all tips paid to all food servers of $1,110,758 or $9.27 for each hour worked by such employees or a net tip rate of 7.7 percent of sales. The hourly rate of $9.27 determined in the manner described above was then applied by respondent to the number of hours each petitioner worked during 1978 in order to arrive at the amount *17 of his or her total tip income. OPINION (1) Tip Income
Tips are includable in gross income as compensation for services rendered. Section 61(a); section 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner,709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Roberts v. Commissioner,176 F.2d 221 (9th Cir. 1949), affg. 10 T.C. 581 (1948); Schroeder v. Commissioner,40 T.C. 30, 33 (1963). All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Section 6001. When an employee receives income from tips, the required records must include an accurate and contemporaneous diary of such income. Section 1.6001-1(a), Income Tax Regs. Furthermore, under section 6053 of the Internal Revenue Code such an employee is required to accurately report the amount of such tips to his or her employer. Nine of the thirteen petitioners did not maintain any records of their tip income. At trial the other four, Canfield, Aquino, Torres, and Biancaniello, each submitted certain records which they contend were *18 prepared by them during 1978 and contain all of their tip income for the year. However, we are not satisfied that these records accurately reflect the tip income of these petitioners. Canfield's records indicate tip income of $3,737 but during the year she reported only $2,035 to Hilton and on her return she reported none. The records submitted by Aquino reflect tip income totaling $5,438 yet during the year he did not report any tips to Hilton and failed to include any on his return for 1978. Torres' records show $4,580.65 in tips but he reported only $4,490.80 to Hilton and reported none on his return. The records produced by Biancaniello contain $3,265.15 in tips but he reported only $2,478.12 to Hilton and only $678 on his return. All four of these petitioners testified at the trial but their testimony does not contain any explanation of why they did not accurately report their tips to their employer and on their returns or why we should accept their current version of the tip situation as being true. Since their overall conduct casts considerable doubt on their credibility, we are not required to accept their self-serving testimony and records at face value. See Avery v. Commissioner,574 F.2d 467 (9th Cir. 1978), *19 affg. a Memorandum Opinion of this Court; Factor v. Commissioner,281 F.2d 100, 111 (9th Cir. 1960), affg. a Memorandum Opinion of this Court; and Nichols v. Commissioner,T.C. Memo. 1983-242. Where, as in these cases, it is found that the taxpayers have not kept records which clearly reflect their income, respondent is authorized by section 446 to adopt a method which, in his opinion, does clearly reflect such income. Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965); Sutherland v. Commissioner,32 T.C. 862 (1959). In such cases the taxpayers have the burden of proving that the method adopted by respondent is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Under the circumstances of these cases we find that the method adopted by respondent is reasonable and fair. Using the records on charge sales, the only available records containing information on tips, he selected a statistically random sample of 28 days from which he computed an average tip rate of 12.5 percent for charge sales where tips were included. At the same time he determined that no tip was charged *20 on 25 percent of the charge sales and using this as a more than fair stiff rate he reduced gross sales, both cash and charge, by 25 percent. The average tip rate of 12.5 percent was then applied to the remaining 75 percent of sales and the total tips determined in this manner was further reduced by the amounts paid by the waiters and waitresses to bartenders and busboys.The final rate arrived at by respondent was only 7.7 percent of gross sales. Petitioners contend that the actual stiff rate suffered by them was higher than that allowed by respondent and that respondent's average tip rate is erroneous because it is based only on charge sales. They argue that tips on cash sales are typically lower than tips on charge sales. The actual tips realized by petitioners cannot be determined in this case because petitioners failed to maintain accurate records. In the absence of such records, respondent's reconstruction of the tip income need only produce "a result which is substantially correct." Mendelson v. Commissioner,305 F.2d 519, 523 (7th Cir. 1962). We are satisfied that such is the result produced by respondent's determination in these cases. [4] *21 (2) Additions to Tax Under Section 6653(a)
Petitioners failed to maintain accurate records of their tip income as required by section 6001 and the regulations issued thereunder. At the trial they submitted no evidence to justify their failure to keep such records or to establish error in respondent's determination that the additions to tax under section 6653(a) are due. We find, therefore, that respondent's determination with respect to the additions is proper. See Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965). Decision will be entered for the respondent.
Footnotes
1. Cases of the following petitioners were consolidated for trial, briefing and opinion: Jesse M. Canfield and Leah Lock Canfield, Docket No. 30945-81; Robert E. Krenn and Donna Krenn, Docket No. 30946-81; Adam A. Lazarewicz and Christiana Lazarewicz, Docket No. 30947-81; Margaret L. Fagan, Docket No. 30948-81; Vera Cullen, Docket No. 30950-81; Ruben V. Aquino and Carmelita G. Aquino, Docket No. 30951-81; Ulysses Ray and Mary Ray, Docket No. 30952-81; Fred Bieler and Isayana Bieler, Docket No. 30953-81; Jose A. Conde and Mary E. Conde, Docket No. 30954-81; Jose Torres and Yolanda Torres, Docket No. 30956-81; Hans J. Scholz, Docket No. 30957-81; and Benito Biancaniello and Marianne Biancaniello, Docket No. 2892-82.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
*. These petitioners maintained no personal record of their tip income.↩
3. The percentage of customers who left no tip.↩
4. In reaching this conclusion we are aware that in some other cases we have adjusted a tip rate determined by respondent where he relied solely upon tips paid on charge sales. However, in this case we feel that the rate determined by respondent is so reasonable that no such adjustment is required.↩